No. 3–09–0743

Filed June 7, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD JUDICIAL DISTRICT

A.D., 2010

| | | |
|---|---|---|
| RACHEL PETERSON, | ) | Appeal from the Circuit Court |
| Administrator of the Estate of | ) | of the 10th Judicial Circuit, |
| Jacob H. Terhorst, Deceased, | ) | Peoria County, Illinois, |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 09–L–4 |
| | ) | |
| RESIDENTIAL ALTERNATIVES OF | ) | Honorable |
| ILLINOIS, INC., an Illinois Corporation, | ) | Joe R. Vespa, |
| | ) | Judge, Presiding. |
| Defendant-Appellee, | ) | |
| | ) | |
| (Edwin Enterprises, L.L.C.; Donald E. Fike; | ) | |
| Anthony James Fike Trust, Dated 11/6/90; | ) | |
| Aaron Mitchell Fike Trust, Dated 11/6/90; | ) | |
| Suzanne Elizabeth Fike Trust, Dated | ) | |
| 11/6/90; RFMS, Inc., a Foreign Corporation; | ) | |
| The Methodist Medical Center of Illinois, | ) | |
| a Corporation; and Michael Koeppen, | ) | |
| | ) | |
| Respondents in Discovery). | ) | |

JUSTICE WRIGHT delivered the opinion of the court:

Initially, Ann Bonomo filed a two-count complaint against defendant on January 7, 2009.

Thereafter, Bonomo filed a first amended complaint against defendant on May 8, 2009, alleging

one count of violations of the Illinois Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West

2006)) and one count of wrongful death. On June 1, 2009, defendant filed a motion to dismiss and compel arbitration. On September 3, 2009, the trial court found, "[a]s a matter of law the arbitration agreement controls" between the parties. The court dismissed Bonomo's first amended complaint and ordered the parties to participate in arbitration. Bonomo filed an appeal on September 17, 2009. On January 7, 2010, this court granted Bonomo's motion to substitute Rachel Peterson as plaintiff-appellant. Plaintiff Peterson and defendant are the only parties to this appeal.

FACTS

On January 7, 2009, Ann Bonomo (plaintiff), as executor of the estate of Jacob H. Terhorst (Terhorst), filed a two-count complaint against defendant Residential Alternatives of Illinois, Inc. (defendant), alleging a survival action count and a wrongful death count. Counsel, on behalf of defendant, filed an appearance with the court on January 22, 2009, and demanded a trial by jury. On February 20, 2009, defendant filed an answer to plaintiff's complaint denying the claims against defendant, seeking judgment in defendant's favor, and demanding a jury trial.

On March 13, 2009, plaintiff filed a motion for leave to file a first amended complaint which the trial court granted on May 8, 2009. Count I of plaintiff's first amended complaint alleged a survival action pursuant to the Illinois Nursing Home Care Act (210 ILCS 45/1-101 *et seq*. (West 2006)) (Act). Plaintiff claimed that Terhorst was 92 years old on November 29, 2006. On that day, Terhorst became a resident of Hawthorne Manor, now known as Manor Court of Peoria (Manor). The count alleged that Manor was a nursing care facility as defined by the Act and that from November 29, 2006, until at least June 2, 2007, defendant owned and licensed Manor within the meaning of the Act.

2

Plaintiff further alleged in count I that Terhorst remained a resident at Manor from November 29, 2006, until June 2, 2007, and that on June 2, 2007, Terhorst died. During that time, Manor charged Terhorst monies to provide Terhorst with medical care, personal care and a residence.

Plaintiff claimed that defendant committed one or more negligent acts or omissions within the meaning of the Act, failed to provide adequate care to Terhorst, and neglected and abused Terhorst. As a result of these actions, Terhorst suffered injuries, mental and physical pain, anguish and medical costs. Plaintiff sought compensatory damages in excess of $50,000 and attorney fees.

Count II of the first amended complaint realleged most of the same allegations as count I. Further, count II alleged that as a result of defendant's acts or omissions, Terhorst was injured and ultimately died. Count II sought damages suffered by Terhorst's next of kin in excess of $50,000 and costs.

On May 19, 2009, defendant filed an answer to plaintiff's first amended complaint. Defendant denied any negligent acts or omissions and denied causing any injury to Terhorst or his next of kin. Defendant sought judgment in its favor and demanded a jury trial.

On June 1, 2009, defendant filed a motion to dismiss and compel arbitration. The motion to dismiss was filed pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2008)) and included an attached exhibit. The exhibit contained two separate documents. The first document contained the heading "CONTRACT." The second document was entitled "Arbitration Agreement." Both documents, attached as exhibit A to the motion to dismiss, were dated November 29, 2006. Each document contained the signature of the legal

representative of Terhorst and the signature of a facility representative for defendant.

The contract began with the following language:

"CONTRACT
Between

Resident and Manor Court (Facility Name) and legal representative

for the responsibilities and rights of the parties with respect to the

Residents stay at the facility."

The first page of this document identified the name of the resident, Jacob Terhorst, the responsible party, Ann Bonomo, and the admission date of November 29, 2006. The bottom of the first page of the document also indicated that the contract consisted of seven pages.

The first 23 paragraphs of the 7-page document, marked A through W, described the room and board, late payments, types of government programs for payments, ancillary charges, resident's right to choose a physician, pharmacy and independent providers, discharge and termination of contract terms, personal belongings, services, deposits and refunds, and indemnification. Thereafter, the document identified the daily rate for rooms and finance charges.

On page six of the contract, the language contained in the document set forth policies and additional information including treatment refusal, rules and regulations, overnight leave, smoking policy, room assignments and policies on valuables. The document ended with signature lines for the resident, legal representative and the facility representative.

The second document, attached as exhibit A, to the motion to dismiss was entitled "Arbitration Agreement." This document began with the following language: "Without limiting

4

any rights set forth in other provisions of this AGREEMENT, any and all disputes arising hereunder shall be submitted to binding arbitration and not to a court for determination." In the next paragraph, the document stated:

"Notwithstanding the parties intent to submit any controversy or claim arising out of or relating to this AGREEMENT or any other document signed or initialed in connection with this AGREEMENT to arbitration, in the event that a court of competent jurisdiction shall determine or a relevant law shall provide that a particular dispute is not subject to the arbitration provisions of this Section, then the parties agree to the following provisions:

a. Each party believes that justice will be served if issues regarding this AGREEMENT are heard by a judge in a court proceeding, and not a jury, and each party hereby waives their right to a trial by jury. ***

b. The party prevailing in such dispute shall be entitled to recover all costs incurred ***."

Signature lines immediately followed for the resident, the resident's representative and the facility representative.

On August 10, 2009, plaintiff filed a response and motion to strike defendant's motion to dismiss and compel arbitration. Plaintiff denied that an enforceable agreement existed which required the arbitration of disputes regarding services provided under the nursing home care

contract. Alternatively, plaintiff also claimed that defendant waived its right to arbitration by answering the first amended complaint and, thereafter, participating in the court proceedings. Additionally, plaintiff submitted public policy barred any attempt to cause an individual to waive his or her rights under the Act. On August 18, 2009, defendant filed a reply to plaintiff's response and motion to strike.

On August 25, 2009, the trial court entered a written order. This order indicated that, having heard the arguments of counsel on defendant's motion to dismiss and compel arbitration, the trial court elected to take the matter under advisement. On September 3, 2009, the trial court entered a written order that concluded "[a]s a matter of law the arbitration agreement controls." The trial court granted defendant's motion and dismissed plaintiff's complaint. The trial court ordered that the "Parties shall proceed to Arbitration."

On September 17, 2009, plaintiff filed a notice of appeal. On January 7, 2010, this court granted Bonomo's motion to substitute Rachel Peterson as plaintiff-appellant. Plaintiff Peterson and defendant are the only parties to this appeal.

ANALYSIS

In this appeal, plaintiff asserts the trial court erroneously found that the arbitration agreement (Agreement) controlled all disputes stemming from the nursing home care contract. First, plaintiff argues that the Agreement is unenforceable. Second, plaintiff argues that the Agreement was void at the time of execution pursuant to the Illinois Nursing Home Care Act, existing Illinois case law, and public policy. Next, plaintiff claims defendant waived all claims to assert federal preemption, and defendant did not properly perfect its right to arbitration. Finally, plaintiff argues that count II of the first amended complaint is based on negligence

6

claims asserted by Terhorst's next of kin who were not parties to either the nursing home care contract or the Agreement.

On appeal, defendant argues that the trial court properly determined the Agreement controlled controversies arising out of the nursing home care contract. Defendant claims that the language of the Agreement is clear, conscionable and binding. Defendant submits, based on recent case law, that the Act is preempted by federal law, denies waiving its right to arbitration, and asserts plaintiff interfered with defendant's contractual right to arbitration.

Standard of Review

Initially, we note that the parties disagree as to the proper standard of review. Plaintiff asserts that since the trial court ruled on a question of law and granted a motion to compel arbitration, this court should review the trial court's ruling *de novo*. Defendant asserts that the trial "implicitly made" factual findings that both documents should be considered as one uniform contractual agreement. Defendant claims those implicit findings were not against the manifest weight of the evidence in this case.

First, we reject the notion that the trial court made implicit findings of fact in this case. The record does not establish that the court conducted an evidentiary hearing on the motion to dismiss or the motion to compel arbitration. When a trial court does not hold an evidentiary hearing and enters an order in the absence of any factual findings, a trial court's decision to grant a motion to compel arbitration is reviewed *de novo*. *Vassilkovska v. Woodfield Nissan, Inc.* 358 Ill. App. 3d 20, 24 (2005); *Peregrine Financials & Securities v. Hakakha,* 338 Ill. App. 3d 197, 202 (2003).

It is also well established that trial court orders granting section 2-619 (735 ILCS 5/2-619

7

(West 2008)) motions to dismiss are reviewed *de novo*. *Progressive Insurance Co. v. Williams*, 379 Ill. App. 3d 541, 544 (2008); *Karris v. US Equities Development, Inc.*, 376 Ill. App. 3d 544, 549 (2007). Consequently, we review the trial court's decision granting defendant's section 2-619 motion to dismiss, as well as defendant's motion to compel arbitration *de novo*.

Nursing Home Care Contract

In this appeal, we must review the trial court's decision based on the contents of this record, which is limited to the language contained within the four corners of each document. Both the nursing home care contract and the Agreement were executed and signed by the parties on November 29, 2006. The parties do not dispute that the contract pertaining to Terhorst's nursing home care was unambiguous, complete, and enforceable as written. However, the parties strenuously dispute whether the terms of the separate Agreement apply to resolve all controversies arising out of the nursing home care contract in this case.

Illinois has adopted the Uniform Arbitration Act. 710 ILCS 5/1 *et seq*. (West 2008). An agreement to arbitrate is a matter of contract. *Salsitz v. Kreiss,* 198 Ill. 2d 1, 13 (2001). Individual state contract law determines whether the parties actually agreed to arbitrate future disputes. *Bess v. DirecTV, Inc.*, 381 Ill. App. 3d 229, 234 (2008). Plaintiff asserts the parties did not agree to arbitrate future disputes relating to the nursing home care contract. Without referring this court to any specific case law, defendant submits that the two separate documents in this case should be construed together as one unified agreement simply because the documents were executed on the same date by the same parties.

Our research reveals that separate instruments executed at the same time, by the same parties, and for the same purpose are regarded as one contract under certain circumstances.

*Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007). However, defendant does not provide any authority to this court demonstrating that this principle has been extended to separate documents, executed on the same date, when neither document clearly refers to or expressly incorporates the other document.

Our supreme court has held that documents executed on the same date may not operate as one unified agreement when "a contrary contention is manifested." *Sandra Frocks, Inc. v. Ziff*, 397 Ill. 497, 504 (1947). Parties may not incorporate another agreement into a contract without an express "reference" demonstrating an intent to incorporate another agreement into the contract. See *McWhorter v. Realty World-Star, Inc.*, 171 Ill. App. 3d 588, 592 (1988). The rules of contract construction include a strong presumption against adding conditions or provisions that could have been easily included by the parties as terms of the contract, but were not. *Braeside Realty Trust v. Cimino*, 133 Ill. App. 3d 1009, 1011 (1985).

In this case, arbitration is not the only topic addressed in the separate two-page agreement. First, the Agreement describes the detailed process for arbitration. Alternatively, the Agreement explicitly goes on to require that if a court determines the arbitration provisions are unenforceable, then both parties agree to waive the right to a trial by jury.

In Illinois, the Nursing Home Care Act prohibits dispute resolution regarding nursing home care by means other than a trial by jury (210 ILCS 45/3-606, 3-607 (2006)). At the time the parties signed the separate documents in this case, our supreme court had not issued its decision in *Carter v. SSC Odin Operating Co.*, No. 106511 (April 15, 2010). In that decision, our supreme court held that the Federal Arbitration Act (9 U.S.C. §2 (2000)) preempted the anti-waiver provisions contained in the Illinois Nursing Home Care Act *provided* that the contract

9

was subject to the other terms of the Federal Arbitration Act, including whether the contract involved interstate commerce. In this case, the parties are presumed to know the status of the law at the time of their agreement. See *Braeside Realty Trust v. Cimino*, 133 Ill. App. 3d at 1012.

At the time of their agreement pertaining to nursing home care for Terhorst, the parties could have easily utilized terminology requiring arbitration, but they did not incorporate this language into the nursing home care contract. In fact, the seven-page nursing home care contract, dated November 29, 2006, specifically states that the nursing home care contract consists of seven pages. Within those seven pages, the nursing home care contract does not restrict litigation to nonjury trials or require arbitration.

We construe this silence as deliberate, intended, and consistent with both existing case law at the time of the agreement and the provisions of the Act (210 ILCS 45/3-606, 3-607 (West 2006)). Based on the circumstances of this case, we conclude that the conspicuous absence of language requiring arbitration constitutes "a contrary contention" that defeats defendant's request for this court to construe both documents executed on the same date as one agreement. See *Sandra Frocks, Inc. v. Ziff*, 397 Ill. at 504.

In the interest of engaging in a thorough examination of this issue, we next consider whether the Agreement creates a separate and independent contractual obligation to arbitrate all controversies arising out of the nursing home care. The separate, two-page Agreement begins with the following introductory language:

> "Without limiting any rights set forth in other provisions of *this* AGREEMENT, any and *all disputes arising hereunder* shall be submitted to binding arbitration and not to a court for determination." (Emphasis added.)

10

Based upon the plain language utilized by the parties, we conclude the phrase "this AGREEMENT" refers to the arbitration agreement. While circular, clearly this language does not discuss the nursing home care contract as the identified source for controversies subject to required arbitration.

The second paragraph of the Agreement provides:

> "Notwithstanding the parties intent to submit any controversy or claim arising out of or relating to this AGREEMENT or any other document signed or initialed in connection with this AGREEMENT to arbitration, in the event that a court of competent jurisdiction shall determine or a relevant law shall provide that a particular dispute is not subject to the arbitration provisions of this Section, then the parties agree to the following provisions:
>
> a. Each party believes that justice will be served if issues regarding this AGREEMENT are heard by a judge in a court proceeding, and not a jury, and each party hereby waives their right to a trial by jury."

The language "any other document signed or initialed in connection with this AGREEMENT" is circuitous but, again, not uncertain. Since neither the nursing home care contract nor the Agreement incorporates or refers to the other, we are unable to conclude that the nursing home care contract for Terhorst's nursing home care was "signed or initialed *in connection with* this [arbitration] AGREEMENT."

The case law provides that an enforceable contract must be premised on language that is definite and certain as to all essential terms. *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d

11

24, 30 (1991).  Thus, we conclude the Agreement does not contain a clearly expressed intent to arbitrate controversies arising out of the separate nursing care contract.  Based on this conclusion, it is not necessary to address the other claims of error raised by plaintiff in this appeal.

CONCLUSION

The judgment of the circuit court of Peoria County dismissing plaintiff's first amended complaint and ordering the parties to participate in arbitration is reversed.  Plaintiff's first amended complaint is reinstated, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

HOLDRIDGE, P.J., and CARTER, J., concur.