# Illinois Official Reports

## Appellate Court

> **Board of Education of Gardner-South Wilmington High School District 73 v. Village of Gardner, 2014 IL App (3d) 130364**

| | |
|---|---|
| Appellate Court Caption | THE BOARD OF EDUCATION OF GARDNER-SOUTH WILMINGTON HIGH SCHOOL DISTRICT 73, Plaintiff-Appellee, v. THE VILLAGE OF GARDNER, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-13-0364 |
| Filed<br>Rehearing denied | April 17, 2014<br>July 2, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for plaintiff school district in its action to collect money due the district from defendant village pursuant to a license agreement under which the district granted the village a license to use outdoor recreational facilities owned by the district in the village's TIF district, notwithstanding the village's contention that the district violated the agreement by using the village's payments for purposes other than capital costs, since nothing in the license agreement or the Tax Increment Allocation Redevelopment Act limited how the district could spend the funds it was paid by the village. |
| Decision Under Review | Appeal from the Circuit Court of Grundy County, No. 12-L-46; the Hon. Robert C. Marsaglia, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Scott M. Belt and Bradley Nolden (argued), both of Scott M. Belt & Associates, P.C., of Morris, for appellant. |
| | |
| | Kenneth M. Florey (argued) and M. Neal Smith, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellee. |
| | |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion. Justices Carter and Wright concurred in the judgment and opinion. |

## OPINION

¶ 1    In 1986, the Village of Gardner (Village) entered into an agreement with the Board of Education of Gardner-South Wilmington High School District 73 (District). The agreement granted the Village a license to use the District's outdoor recreational facilities within the designated redevelopment area. In 2012, the District sued the Village, alleging that the Village failed to make the payments called for by the agreement. The trial court agreed and granted summary judgment in favor of the District. The Village appeals and argues that it was not required to make payments to the District because the District sought to spend the funds in violation of the Tax Increment Allocation Redevelopment Act (TIF Act) (65 ILCS 5/11-74.4-1 *et seq.* (West 2012)).

¶ 2    Because neither the contract itself nor the TIF Act limits how the District may spend the funds it is paid by the Village under the license agreement, we affirm.

¶ 3                                    BACKGROUND

¶ 4    On December 29, 1986, pursuant to the TIF Act, the Village adopted a redevelopment plan and established the Gardner Redevelopment Project Area (TIF district). In aggregate, the TIF district encompassed an area of approximately 1½ acres within the Village. The redevelopment plan and project were subsequently amended four times, most recently in 2007.

¶ 5    The District owned some recreational property within the TIF district, which consisted of tennis courts and a baseball field. On December 29, 1986, the District and the Village entered into an agreement pursuant to the TIF Act, the Intergovernmental Cooperation Act (5 ILCS 220/1 *et seq.* (West 2012)), and the Illinois Constitution (Ill. Const. 1970, art. VII, § 10). In the agreement, the parties found that it would substantially benefit the property within the TIF district to provide public recreational facilities within the redevelopment area. The agreement granted the Village a nontransferable "license" to use the District's outdoor recreational facilities within the TIF district. The license would last until the area was no longer designated as a redevelopment project area and the TIF district was dissolved by the Village.

¶ 6 In exchange for the license, the Village agreed to pay the District yearly "a percentage of the total annual amount due." The agreement defined "total annual amount due" as follows:

"The total annual amount due shall be the positive difference between the CURRENT EQUALIZED ASSESSED VALUE of all taxable property in the redevelopment area multiplied by School District's RATE PERCENT OF TAX, less the TOTAL INITIAL EQUALIZED ASSESSED VALUE of all taxable real property in the redevelopment area multiplied by the School District's RATE PERCENT OF TAX."

The percentage of the total amount due that the Village would pay to the District would be determined by the ratio of taxes the Village actually received from the TIF district compared the total amount of taxes it was entitled to receive.

¶ 7 The agreement contained no express restriction on what the District could do with the payments it received from the Village. The agreement also contained an integration clause, stating that it was "the complete and final understanding of the parties with respect to the subject matter."

¶ 8 Since 1986, the Village has paid the District over $4.5 million pursuant to the agreement. However, in 2012, the Village withheld payment.[1] On October 4, 2012, the District filed a complaint against the Village in the circuit court of Grundy County. The District alleged that it had made the facilities available to the Village as called for by the contract and that the Village had breached the contract by failing to pay. The District alleged it was due $400,000 under the terms of the agreement. The Village answered, admitting it withheld payment but denying liability. The Village also set forth two affirmative defenses. First, it alleged that the District failed to satisfy a condition precedent of the contract because the District sought to spend funds on employee salaries or benefits, which did not comply with the TIF Act. According to the Village, the District could only spend the funds it received on capital costs. Second, it alleged that the District's expenditures frustrated the Village's reporting obligations under the TIF Act.

¶ 9 The District moved for partial summary judgment on the issue of liability, and on December 31, 2012, the court granted summary judgment in favor of the District. The court stated that the Village had paid the District "for 26 years, pursuant to the agreement, and without restriction." The court rejected the Village's affirmative defenses, finding that the agreement was a license agreement executed pursuant to section 11-74.4-4(c) of the TIF Act (65 ILCS 5/11-74.4-4(c) (West 2012)), and ruled that this section of the statute did not restrict how the District could use the funds it received.

¶ 10 The District then moved for summary judgment on the issue of damages, while the Village filed a motion to reconsider the court's prior order. In its motion, the Village argued that the trial court had erred in interpreting the TIF Act. In addition, the Village argued that the agreement was ambiguous and that the court had erroneously made a finding of fact. Among the affidavits the Village attached to its motion, it included affidavits from the current mayor and former mayor of Gardner. They stated that the agreement was administered "with the understanding" that the District would use the funds it received from the Village to pay for capital costs. Finally, the Village argued that the agreement was unconscionable because the value granted to the Village from the use of the District's

---

[1] It does not appear that any subsequent payments were withheld.

recreational facilities was grossly inadequate compared to the amount of money the Village was required to pay.

¶ 11   On May 8, 2013, the court entered two orders. First, it denied the Village's motion to reconsider. The court admitted that it had erred in its original order when it stated that the payments had not had any restriction; whether the funds had been paid to the District without any restriction on their use was a disputed factual matter which could not be resolved at summary judgment. However, the court reiterated its conclusion that, as a matter of law, the TIF Act did not impose any restriction on how the District could use the funds it received under the license agreement. It also rejected the Village's unconscionability argument, finding that the agreement was negotiated at arm's length, with full knowledge by the parties. In its second order, the court entered summary judgment as to damages, awarding the District $419,111.71.

¶ 12   The Village filed a timely notice of appeal.

¶ 13                                                          ANALYSIS

¶ 14   On appeal, the Village argues that it was not obligated to pay the District because the District sought to spend the license income on employee benefits and salaries. According to the Village, the District was required to spend the funds it received under the agreement on capital costs and improvements. Although the agreement itself contains no such requirement, the Village argues that this restriction is imposed by the TIF Act. In the alternative, the Village argues that the agreement is ambiguous and that the matter should be remanded for trial to determine whether the parties intended that the District use the license fees it received solely on capital costs. In response, the District contends that the trial court correctly determined that the TIF Act does not restrict how the District may spend funds received pursuant to the license agreement.

¶ 15   When interpreting a contract, our primary goal is to give effect to the intent of the parties. *International Supply Co. v. Campbell*, 391 Ill. App. 3d 439, 452 (2009). The best indication of the intent of the parties is the contract's plain language, and when a contract is plain and unambiguous, it must be enforced as written. *TH Davidson & Co. v. Eidola Concrete, LLC*, 2012 IL App (3d) 110641, ¶ 10.

¶ 16   The arguments of the parties also require us to interpret relevant provisions of the TIF Act. When interpreting a statute, this court's primary objective is to ascertain and give effect to the intent of the legislature. *Ramos v. City of Peru*, 333 Ill. App. 3d 75, 77 (2002). The best way to determine legislative intent is from the plain language of the statute, which, if unambiguous, should be enforced as written. *Board of Trustees of the Teachers' Retirement System of Illinois v. West*, 395 Ill. App. 3d 1028, 1032 (2009). "When the language of the statute is clear and unambiguous, the court should not add exceptions, limitations, or conditions that the legislature did not express." *Fandel v. Allen*, 398 Ill. App. 3d 177, 179 (2010). We construe a statute as a whole: each word, clause, and sentence is given a reasonable meaning and not rendered superfluous, and we avoid an interpretation that would render any portion of the statute meaningless. *Lohr v. Havens*, 377 Ill. App. 3d 233, 237 (2007).

¶ 17        Both the construction of a contract and the interpretation of a statute are questions of law which we review *de novo*. *MD Electrical Contractors, Inc. v. Abrams*, 228 Ill. 2d 281, 286 (2008); *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007).

¶ 18        We begin our analysis with some background on the TIF Act. The TIF Act provides a means for a municipality to develop or redevelop blighted areas. *Board of Education, Pleasantdale School District No. 107 v. Village of Burr Ridge*, 341 Ill. App. 3d 1004, 1010 (2003). When a blighted area is designated as a redevelopment area and a TIF district is established, the assessment of all taxable real property within the district at that point is designated the total initial equalized assessed value. See 65 ILCS 5/11-74.4-8(a) (West 2012); *People ex rel. City of Canton v. Crouch*, 79 Ill. 2d 356, 361 (1980). This is the TIF district's base value. Every taxing district within the redevelopment area assesses property taxes on this base value. 65 ILCS 5/11-74.4-8(a) (West 2012); *Crouch*, 79 Ill. 2d at 362. Each year, the value of all real property within the TIF district is reassessed to determine the current equalized assessed value; the portion of taxes that is attributable to the current equalized assessed value over and above the base value is known as tax increment revenue. See *Crouch*, 79 Ill. 2d at 362. This tax increment revenue, which is in theory attributable to increases in property value within the TIF district resulting from redevelopment projects, is deposited into a special fund to pay for those redevelopment project costs and obligations incurred thereof. See 65 ILCS 5/11-74.4-8(b) (West 2012); *Crouch*, 79 Ill. 2d at 362. In essence, "[t]he TIF Act enables a municipality to eliminate blighted conditions by collecting real property tax increment revenues from local taxing districts within the TIF [d]istrict and diverting the revenues to fund TIF [d]istrict development projects." *Malec v. City of Belleville*, 407 Ill. App. 3d 610, 631 (2011).

¶ 19        The TIF Act grants municipalities a number of different tools to help encourage redevelopment and eliminate blighted conditions. Of relevance to this case, section 11-74.4-4 of the TIF Act outlines a municipality's powers and duties. 65 ILCS 5/11-74.4-4 (West 2012). In particular, section 11-74.4-4(b) provides that a municipality may "[m]ake and enter into all contracts with property owners, developers, tenants, overlapping taxing bodies, and others necessary or incidental to the implementation and furtherance of its redevelopment plan and project." 65 ILCS 5/11-74.4-4(b) (West 2012). Section 11-74.4-4(c) specifically grants a municipality the power to acquire or grant real property interests within the redevelopment area, providing that a municipality may:

> "Within a redevelopment project area, acquire by purchase, donation, lease or eminent domain; own, convey, lease, mortgage or dispose of land and other property, real or personal, or rights or interests therein, and grant or acquire licenses, easements and options with respect thereto, all in the manner and at such price the municipality determines is reasonably necessary to achieve the objectives of the redevelopment plan and project." 65 ILCS 5/11-74.4-4(c) (West 2012).

¶ 20        In the agreement at issue in this case, the Village and the District found that it would substantially benefit the property within the TIF district to provide public recreational facilities within the redevelopment area. Accordingly, the District granted the Village a license to use the District's outdoor recreational facilities. In exchange, the Village agreed to pay the District a percentage of the "total annual amount due," which was a percentage of the tax increment revenues. We conclude that this was a license agreement executed pursuant to section 11-74.4-4(c) of the TIF Act. The plain language of section 11-74.4-4(c) does not

restrict how a licensor of real property may spend the revenues it receives from a municipality when they enter into a license agreement under the TIF Act. Nor does section 11-74.4-4(b) limit what a party entering into a contract with a municipality may do with the funds it receives under that contract. We thus reject the Village's argument that the TIF Act limits how the District could spend these funds.

¶ 21 We are not persuaded by the Village's argument that other provisions of the TIF Act require that payments to taxing districts under a license agreement be spent exclusively on capital costs. The Village's argument, as we interpret it, proceeds in three steps. First, the argument is premised on the idea that TIF revenues may only be spent on redevelopment project costs. See 65 ILCS 5/11-74.4-8(b) (West 2012) (providing that tax increment revenues shall be deposited into a "special tax allocation fund of the municipality for the purpose of paying redevelopment project costs and obligations incurred in the payment thereof"). Second, the Village cites section 11-74.4-4(j) of the TIF Act, which provides that a municipality may incur "project redevelopment costs" if those costs are consistent with the objectives of the redevelopment plan. See 65 ILCS 5/11-74.4-4(j) (West 2012). Third, the Village cites section 11-74.4-3(q)(7)–which is part of the definition of "redevelopment project costs"–and argues that this definition requires that TIF funds transferred from a municipality to another taxing district may only be spent on that taxing district's capital costs. 65 ILCS 5/11-74.4-3(q)(7) (West 2012).

¶ 22 The plain language of the statute does not support the Village's interpretation. The definition of "redevelopment project costs" in the TIF Act is broad and contains no such restriction. The definition provides:

> " 'Redevelopment project costs', except for redevelopment project areas created pursuant to subsection (p-1), means and includes the sum total of all reasonable or necessary costs incurred or estimated to be incurred, and any such costs incidental to a redevelopment plan and a redevelopment project. Such costs include, without limitation, the following: ***." 65 ILCS 5/11-74.4-3(q) (West 2012).

The definition then lists a number of redevelopment project costs. Some of the listed redevelopment project costs include: costs of studies, surveys, and the costs of the implementation and administration of the redevelopment plans, which includes certain professional services (section 11-74.4-3(q)(1)); costs relating to marketing the redevelopment area to businesses, developers, and investors (section 11-74.4-3(q)(1.6)); property assembly costs, which include the acquisition of land and other interests in real or personal property, and site development costs (section 11-74.4-3(q)(2)); costs of rehabilitation, reconstruction, and repair of existing structures (section 11-74.4-3(q)(3)); job training and retraining costs (section 11-74.4-3(q)(5)); financing costs (section 11-74.4-3(q)(6)); and qualifying interest costs incurred by developers (section11-74.4-3(q)(11)). The provision on which the Village relies, section 11-74.4-3(q)(7), provides:

> "To the extent the municipality by written agreement accepts and approves the same, all or a portion of a taxing district's capital costs resulting from the redevelopment project necessarily incurred or to be incurred within a taxing district in furtherance of the objectives of the redevelopment plan and project." 65 ILCS 5/11-74.4-3(q)(7) (West 2012).

¶ 23 The significance of section 11-74.4-3(q)(7) is that it allows a municipality, by agreement, to use TIF funds to pay another taxing district for capital costs that the taxing district incurred

- 6 -

in furtherance of the redevelopment plan. Had the District and the Village executed an agreement pursuant to section 11-74.4-3(q)(7), we might agree that the District was obligated to spend the funds on capital costs. But the agreement at issue is a license agreement under section 11-74.4-4(c), so we find section 11-74.4-3(q)(7) irrelevant. The TIF Act simply does not require that TIF funds paid to another taxing district under a license agreement be used for that taxing district's capital costs.[2]

¶ 24        We also reject the Village's three arguments that the agreement is ambiguous. First, the Village relies on the affidavits from the current and former mayors stating that the agreement was to be administered with the "understanding" that the District would use the funds received for capital improvements. The unambiguous language of the agreement, however, contains no limitations on what the District could do with the license fees it received. Its integration clause forecloses reliance on any "understanding" not specified in the contract. We presume that had the parties intended such a restriction, they would have included it in the plain language of the agreement. See *Wright v. Chicago Title Insurance Co.*, 196 Ill. App. 3d 920, 925 (1990) ("There is a strong presumption against provisions that easily could have been included in the contract but were not."). In addition, where the language of an agreement is clear and unambiguous, the intent of the parties should be determined from the agreement itself and extrinsic evidence may not be considered. See *Richard W. McCarthy Trust v. Illinois Casualty Co.*, 408 Ill. App. 3d 526, 535 (2011). Therefore, despite the Village's attempts to demonstrate an ambiguity through extrinsic evidence, we conclude the agreement itself demonstrates no intent to restrict the District's use of the funds.

¶ 25        Next, the Village argues the TIF plan it adopted in 1986 limits the District to spending the funds at issue on capital costs. According to the Village's brief, "paragraph 15 [of the TIF plan] specifically limits the use of TIF funds transferred to 'other taxing authorities' for use in 'their respective capital development funds.' " The manner in which the Village presented this provision of the TIF plan to this court is blatantly misleading. The paragraph referenced by the Village actually states: "The Villages recognizes [*sic*] the importance of the services provided by other taxing authorities with [*sic*] the Redevelopment District. It may from time to time consider grants for their respective capital funds." This language plainly does not limit the use of TIF funds received by taxing authorities to capital development costs, other than through such grants. Also, even if the TIF plan actually said what the Village contends, the TIF plan was never expressly incorporated into the agreement of the parties and therefore does not govern the agreement. See *Peterson v. Residential Alternatives of Illinois, Inc.*, 402 Ill. App. 3d 240, 245 (2010) (stating that another document is not incorporated into a contract without an express reference demonstrating an intent to do so).

¶ 26        Finally, the Village argues that the agreement is ambiguous because the trial court referred to the agreement as a "license/lease agreement" in its order of May 8, 2013. This argument is completely without merit. The agreement clearly grants the Village a mere

---

[2]To the extent that section 11-74.4-8(b) requires that the license agreement needs to qualify as a redevelopment project cost to authorize the Village's payment of tax increment funds to the District, the license agreement clearly qualifies. The parties found that the license for outdoor recreational facilities within the TIF district would substantially benefit the redevelopment, making it a reasonable or necessary expense. See 65 ILCS 5/11-74.4-3(q) (West 2012) (defining redevelopment project costs as all reasonable or necessary expenses incurred and incidental expenses to the redevelopment plan and project).

license, and there is no genuine contention that the District actually granted the Village a lease to its recreational facilities. The trial court's mistaken use of a term in its order does not render the underlying agreement ambiguous.

¶ 27　　In sum, we conclude that the Village and the District entered into a valid license agreement pursuant to section 11-74.4-4(c) of the TIF Act. Nothing in section 11-74.4-4(c) or in the TIF Act's definition of redevelopment project costs imposes a limitation on the District's use of funds. Moreover, the plain language of that agreement does not limit how the District could spend the license fees it received. We therefore affirm the grant of summary judgment on liability and damages in favor of the District.

¶ 28　　　　　　　　　　　　　　　　CONCLUSION

¶ 29　　For the reasons stated, the judgment of the circuit court of Grundy County is affirmed.

¶ 30　　Affirmed.