# Illinois Official Reports

## Appellate Court

---

### *People v. Ringland*, 2015 IL App (3d) 130523

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CARA M. RINGLAND, Defendant-Appellee.–THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. STEVEN PIRRO, JAMES SAXEN, STEVEN L. HARRIS and MATTHEW P. FLYNN, Defendants-Appellees. |
| District & No. | Third District<br>Docket Nos. 3-13-0523, 3-13-0823, 3-13-0848, 3-13-0926, 3-13-0927 cons. |
| Filed | June 3, 2015 |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, Nos. 12-CF-61, 12-CF-552, 12-CF-584, 12-MR-20, 13-CF-37, 13-CF-144; the Hon. H. Chris Ryan and the Hon. Daniel J. Bute, Judges, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal    Brian Towne, State's Attorney, of Ottawa (Judith Z. Kelly (argued), of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Allan A. Ackerman, of Allan A. Ackerman, P.C., and Stephen M. Komie (argued), both of Chicago, for appellee Cara M. Ringland.

Louis L. Bertrand, of Bertrand Law Office P.C., of LaSalle, for appellees Matthew P. Flynn and Steven Pirro.

Dimitri Golfis (argued), of State Appellate Defender's Office, of Ottawa, for appellee James Saxen.

Douglas B. Olivero (argued), of Louis E. Olivero & Associates, of Peru, for appellee Steven L. Harris.

Panel    JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justices Lytton and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1    In these five consolidated cases, *People v. Ringland*, *People v. Pirro*, *People v. Saxen*, *People v. Harris* and *People v. Flynn*, defendants were each charged separately of felony drug offenses as a result of evidence obtained following traffic stops conducted by the State's Attorney's special investigator Jeff Gaither in La Salle County. Each defendant filed a motion to quash his or her arrest and suppress evidence.

¶ 2    The separate hearings on defendants' motions focused on the traffic stops and Gaither's authority as a member of the State's Attorney's Felony Enforcement (SAFE) unit to execute said stops. Each hearing was premised on substantially the same stipulated testimony; following argument, the trial court granted defendants' motions. The court found that while the State's Attorney had authority to appoint a special investigator pursuant to section 3-9005(b) of Counties Code (55 ILCS 5/3-9005(b) (West 2012)), the failure to comply with the fingerprint requirements of the statute meant that Gaither was not authorized to act as a peace officer on the date of the incidents.

¶ 3    The State appeals, claiming the trial court erred in finding that special investigator Gaither was not authorized to act as a peace officer at the time of the traffic stops where the State's Attorney substantially complied with the necessary fingerprint requirements of the statute.

¶ 4    We affirm.

¶ 5                                BACKGROUND

¶ 6        At the outset, we note that the cases of *People v. Pirro*, *People v. Saxen*, *People v. Harris*, and *People v. Flynn* were all consolidated for appeal on February 7, 2014, under the name of *People v. Pirro*, case No. 3-13-0823. This court, *sua sponte*, consolidated *People v. Ringland*, case No. 3-13-0523, with *People v. Pirro*, as each case is premised on essentially the same set of facts and our disposition of the issues is identical. The following are the pertinent facts of each case.

¶ 7        In case No. 3-13-0523, the State charged defendant, Cara Ringland, via a two-count indictment with felony drug charges arising out of a traffic stop conducted by special investigator Jeff Gaither on Interstate 80 in La Salle County on January 31, 2012. Count I alleged unlawful possession with intent to deliver more than 5,000 grams of cannabis, a Class X felony in violation of section 5(g) of the Cannabis Control Act (720 ILCS 550/5(g) (West 2010)). Count II alleged unlawful cannabis trafficking for knowingly bringing 2,500 grams or more of cannabis into the State of Illinois with the intent to deliver in Illinois or any other state, a Class X felony in violation of section 5.1(a) of the Cannabis Control Act (720 ILCS 550/5.1(a) (West 2010)).

¶ 8        On February 1, 2012, the State initiated a forfeiture action against Ringland seeking forfeiture of $3,300 United States currency seized from the vehicle. The trial court consolidated the causes on May 13, 2012. Ringland filed a motion to quash her arrest and suppress evidence on August 2, 2012, alleging, *inter alia*, that she was placed under arrest by police officers outside their municipal jurisdiction and that she was stopped and detained without probable cause.

¶ 9        In case No. 3-13-0823, the State charged defendant, Steve Pirro, with one count of unlawful possession with intent to deliver more than 2,000 grams but less than 5,000 grams of a substance containing cannabis, a Class 1 felony in violation of section 5(f) of the Cannabis Control Act (720 ILCS 550/5(f) (West 2012)). The charge arose following a traffic stop conducted by special investigator Gaither on Interstate 80 on January 14, 2013. Defendant filed a motion to quash his arrest and suppress evidence, alleging, *inter alia*, that Gaither lacked the authority to effectuate a traffic stop or arrest.

¶ 10       In case No. 3-13-0848, the State charged defendant, James Saxen, via a two-count indictment with unlawful possession with intent to deliver 15 grams or more but less than 100 grams of a substance containing methamphetamine, a Class X felony in violation of sections 55(a)(1) and 55(a)(2)(C) of the Methamphetamine Control and Community Protection Act (720 ILCS 646/55(a)(1), (a)(2)(C) (West 2010)). Count II charged defendant with unlawful possession with intent to deliver 900 or more grams of a substance containing methamphetamine, a Class X felony in violation of sections 55(a)(1) and 55(a)(2)(F) of the Methamphetamine Control and Community Protection Act (720 ILCS 646/55(a)(1), (a)(2)(F) (West 2010)).

¶ 11       In case No. 3-13-0926, the State charged defendant, Steven Harris, with unlawful possession of a controlled substance with intent to deliver more than 15 grams but less than 100 grams of a substance containing cocaine, a Class X felony in violation of section 401(a)(2)(A) of the Illinois Controlled Substances Act (720 ILCS 570/401(a)(2)(A) (West 2010)).

¶ 12        Lastly, in case No. 3-13-0927, the State charged defendant, Matthew Flynn, with unlawful possession with intent to deliver more than 2,000 grams but less than 5,000 grams of a substance containing cannabis, a Class 1 felony, in violation of section 5(f) of the Cannabis Control Act (720 ILCS 550/5(f) (West 2010)).

¶ 13        As was the case with defendants Ringland and Pirro, the charges against defendants Saxen, Harris, and Flynn arose following three separate traffic stops conducted by special investigator Gaither on Interstate 80 in La Salle County. Gaither initiated the stop against Saxen on December 12, 2012; against Harris on November 20, 2012; and against Flynn on March 12, 2013.

¶ 14        Like Ringland and Pirro, defendants Saxen, Harris, and Flynn each filed a motion to quash his arrest and suppress evidence, alleging Gaither lacked the authority to conduct a traffic stop or arrest.

¶ 15        Each cause proceeded to a separate hearing on the individual defendant's motion to suppress. The trial court conducted the hearing on defendant Ringland's motion to suppress first. This is significant, insofar as the other four defendants stipulated to the testimony given by La Salle County State's Attorney Brian Towne and by special investigator Jeff Gaither at Ringland's hearing on February 8, 2013.

¶ 16        At the outset of Ringland's suppression hearing, the parties tendered certain documents obtained pursuant to subpoenas. The hearing itself focused on the traffic stop, and the authority of SAFE investigator Jeff Gaither to execute said stop. The trial judge noted on the record that based on hearings in other cases, SAFE investigators were not sworn in as deputies by the sheriff's department. The parties then stipulated to the transcripts of conversations between Gaither, Peru police officer Jeremiah Brown, and defendant Ringland.

¶ 17        Officer Brown testified that on January 31, 2012, he was doing a "ride along" with Gaither of the SAFE unit. He was not in uniform at the time. They were stationary in the Interstate 80 median when they proceeded to go eastbound on Interstate 80 following a U-Haul vehicle that contained only a driver. They pulled to the left of the U-Haul, observing that the seatbelt appeared to be in use and that the driver kept her eyes facing forward. Gaither explained to Brown that he had a specialty in "truck enforcement" and he would be executing a traffic stop for inadequate mud flaps. Brown also noticed that the U-Haul's license plate was partially obstructed by its frame.

¶ 18        Gaither stopped the U-Haul and approached the passenger-side window while Brown approached the driver's window. Less than two minutes later, Gaither signaled Brown to call the canine unit and had defendant exit her vehicle and sit in his squad car. Brown believed that the Peru canine unit was required to respond whenever SAFE executed a traffic stop.

¶ 19        Gaither testified that he had been employed by the Illinois State Police from 1987 to 2011, before retiring in July 2011 as a master sergeant. He then accepted a position as an investigator with the SAFE team to look for narcotic traffickers traveling along Interstate 80 in La Salle County. He did not have his fingerprints taken in connection with accepting the position with SAFE. His fingerprints had been taken prior to his 1987 graduation from the State Police Academy and maintained by the State Police since that time. However, he had recently been fingerprinted in connection with a job coaching softball at the high school and those had been sent to Springfield.

¶ 20    Gaither took an oath in January 2012 when he joined SAFE. He received his paychecks from La Salle County. He was provided a Ford Explorer with "police emergency equipment." He did not take an oath as a deputy sheriff, but did get sworn in as a Spring Valley police officer, although that was after he conducted the traffic stop of defendant Ringland on January 31, 2012.

¶ 21    Gaither testified that on January 31, 2012, he was stopped in the Interstate 80 median at the western county line of La Salle County with Peru police officer Jeremiah Brown present as a ride along. He observed a U-Haul proceeding eastbound with a female driver and no passengers. He pulled out to look at the U-Haul, noticing the mud flaps were inadequate and the license plate was obstructed. He then pulled to the left of the U-Haul; the driver continued to look straight ahead and was wearing her seatbelt. Gaither executed a traffic stop based on the mud flap violation. He had Officer Brown call in the traffic stop to the Spring Valley dispatcher with Brown reading off the license plate number.

¶ 22    Gaither approached the passenger side of the U-Haul and obtained Ringland's driver's license and rental agreement. He took the documents to the squad car and asked Ringland to accompany him. He informed Ringland his intent was to issue a written warning for the violation. Gaither stated it generally takes him an estimated 10 minutes to complete a warning ticket. He engaged the defendant in conversation, eliciting where she was coming from (Nevada City, California), where she had rented the vehicle three days earlier, where she was going, and what she was doing. She was not under arrest.

¶ 23    By prearrangement, the canine unit is automatically brought to any traffic stop called in by a SAFE officer. Here, it arrived before Gaither completed the warning ticket. The dog alerted to the vehicle.

¶ 24    La Salle County State's Attorney Brian Towne testified next. Towne testified that he formed the SAFE unit in late 2011 to have a drug interdiction team operating primarily on Interstate 80. The unit was comprised of officers with extensive experience with drug interdiction, along with canine assistance, and additional agencies for follow-up and support. Towne authorized those officers to operate with police powers pursuant to section 3-9005(b) (55 ILCS 5/3-9005(b) (West 2010)), the statute governing the duties and powers of the State's Attorney. The statute specifically provides that the State's Attorney may appoint special investigators. Towne stated he was aware that the statute required that fingerprints of the appointee special investigator be taken and transmitted to the Illinois State Police to check for convictions. He was further aware that the section referred to the State's Attorneys Appellate Prosecutor's Act (725 ILCS 210/7.06 (West 2010)), which contained additional requirements to allow investigators to act as peace officers, and he had taken steps to comply with those requirements. One of those requirements included completion of basic police training or a waiver based upon the investigator's prior law enforcement experience or training.

¶ 25    Towne knew that Gaither had been a decorated member of the Illinois State Police for more than 20 years prior to his retirement in July 2011. Gaither had been through all the required Illinois State Police training. Based upon Gaither's prior law enforcement experience, Towne applied for a waiver from the Illinois Law Enforcement Training Standards Board's basic training course. In March 2012, Towne received from the Law Enforcement Training Standards Board confirmation that his request regarding Gaither's waiver had been granted.

¶ 26    Despite his knowledge that section 3-9005(b) required that before a person can be appointed as a special investigator, fingerprints shall be taken and transmitted to the Illinois

State Police, Towne failed to do so. He had been informed that the Illinois State Police already had Gaither's fingerprints on file. The Illinois State Police did not inform Towne's office as to whether Gaither had been convicted of a felony or crime involving moral turpitude, another requirement per the statute. Towne swore Gaither in as a special investigator with the State's Attorney's office on January 21, 2012.

¶ 27    As previously mentioned, the parties in *Pirro*, *Saxen*, *Harris*, and *Flynn* stipulated to the testimony of Towne and Gaither in the hearing on their motions to suppress. However, unlike *Ringland*, in each of those four consolidated cases, the parties entered the following additional stipulations:

> "The parties agree and stipulate that if Laura Baker were called to testify, she would state under oath as follows:
>
> 1) Laura Baker would testify that she is employed by the Illinois Law Enforcement Training and Standards Board. She would testify that one of her responsibilities is to perform background checks for individuals who have submitted waiver requests.
>
> 2) She would testify that on January 19, 2012, a background check was performed on Jeffery Gaither through the Illinois State Police Criminal History Record Inquiry, and that there were no felony convictions or crimes of moral turpitude found on the background check. She would further testify that there was no information gained from the background check that would have interfered with the issuance of his waiver request."

The second stipulation read as follows:

> "The parties agree and stipulate that if Lieutenant John Rattigan were called to testify she [*sic*] would state under oath as follows:
>
> 1) That John Rattigan is employed as a Lieutenant with the Illinois State Police, specifically the Bureau of Identification.
>
> 2) He would testify that the Illinois State Police have fingerprints on file for Investigator Jeffery Gaither and Investigator Daniel Gillette. He would further testify that both of their fingerprints have been on file with the Illinois State Police since before 1990."

¶ 28    We note that while all defendants questioned Gaither's authority to make the stops, defendants Harris and Saxen specifically referred to the State's Attorney's failure to comply with the procedures of section 3-9005(b) in employing Gaither. Saxen also called into question whether the activities of the SAFE unit exceeded the scope of the statute, where counsel argued:

> "I'm also alleging the fact that I believe even if they had followed the proper procedure and done everything, that they were actually exceeding the authority given to them under the statute which, basically, says they're allowed to help the State investigate matters and serve subpoenas and things of that nature. I believe that putting them out as a police unit on a public highway would be a violation of that statute. We go beyond the powers that are granted to them under that statute."

¶ 29    Following argument, the respective trial judges in each of the five cases ruled that strict compliance with the fingerprint requirement of section 3-9005(b) was required prior to Gaither's appointment as a special investigator. The trial court noted that the State's Attorney had the statutory authority to appoint special investigators to conduct investigations with

regard to drug trafficking. However, it found that the State's Attorney had only those powers, duties, and authority granted under the particular statute and if the statute contained a restriction therein, it was to be strictly enforced. The statute unequivocally required that the applicant's fingerprints be taken and transmitted to the Illinois State Police and the State Police shall examine its records and submit any conviction information to the State's Attorney. Such requirements were not met, thus the court found Gaither lacked the authority to execute each traffic stop and arrest. The trial court granted the defendants' motions to suppress.

¶ 30    The State appeals.

¶ 31                                    ANALYSIS

¶ 32    The State contends that the trial court erred in granting defendants' motions to suppress when it found that Gaither did not have the authority to act as a peace officer. Specifically, the State argues that State's Attorney Towne strictly complied with the statute or, in the alternative, substantially complied such that Gaither did have the authority to effectuate the traffic stops and ensuing arrests as a special investigator.

¶ 33    At the outset, we note that "we review the trial court's judgment, not its reasoning, and we may affirm on any grounds in the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct." *Suchy v. City of Geneva*, 2014 IL App (2d) 130367, ¶ 19 (citing *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995)). Moreover, we recognize the general rule that "although a defense not raised in the trial court may not be raised for the first time on appeal by an appellant, 'the appellee may urge any point in support of the judgment on appeal, *** so long as the factual basis for such point was before the trial court.' " *Travelers Casualty & Surety Co. v. Bowman*, 229 Ill. 2d 461, 470-71 (2008) (quoting *Shaw v. Lorenz*, 42 Ill. 2d 246, 248 (1969)).

¶ 34    On appeal, in addition to his contention that we should affirm the trial court's suppression of the evidence because it correctly determined that Gaither did not have authority to conduct the stop where there was not even substantial compliance with the background verification procedures of section 3-9005(b), defendant Saxen alternatively contends that Gaither exceeded the authority that section 3-9005(b) affords special investigators. Leaving aside the issue of whether the State's Attorney either strictly or substantially complied with the fingerprint requirement of the statute, we agree with defendant Saxen that the conduct of both the SAFE unit and Gaither exceeded the scope of section 3-9005(b), rendering the traffic stops and arrests unlawful. 55 ILCS 5/3-9005(b) (West 2012). Thus, the trial court correctly granted defendants' motions to suppress.

¶ 35    Section 3-9005(b) of the Counties Code provides, in pertinent part:

> "(b) The State's Attorney of each county shall have authority to appoint one or more special investigators to serve subpoenas, make return of process and conduct investigations which assist the State's Attorney in the performance of his duties. A special investigator shall not carry firearms except with permission of the State's Attorney and only while carrying appropriate identification indicating his employment and in the performance of his assigned duties.
>
> Subject to the qualifications set forth in this subsection, special investigators shall be peace officers and shall have all the powers possessed by investigators under the State's Attorneys Appellate Prosecutor's Act." 55 ILCS 5/3-9005(b) (West 2012).

¶ 36 The relevant portion of the State's Attorneys Appellate Prosecutor's Act provides:

"(a) The Director may contract for such investigators to provide investigative services in criminal cases and tax objection cases for staff counsel and county state's attorneys. Investigators may be authorized by the board to carry tear gas gun projectors or bombs, pistols, revolvers, stun guns, tasers or other firearms.

Subject to the qualifications set forth below, investigators shall be peace officers and shall have all the powers possessed by policemen in cities and by sheriffs; provided, that investigators shall exercise such powers anywhere in the State only after contact and in cooperation with the appropriate local law enforcement agencies." 725 ILCS 210/7.06(a) (West 2012).

¶ 37 Risking redundancy, it is important to note that the State's Attorney has the authority to appoint special investigators to perform only three specific functions: (1) serving subpoenas; (2) making return of process; and (3) conducting investigations that "assist the State's Attorney in the performance of his duties." The statute is conspicuously devoid of any other functions a special investigator may undertake. Thus, the plain language of section 3-9005(b) demonstrates that the legislature intended the functions of special investigators to be limited to the three functions listed. See, *e.g.*, *People ex rel. Illinois Department of Corrections v. Hawkins*, 2011 IL 110792, ¶ 23 ("The most reliable indication of the legislature's intent is the plain language of the statute." (citing *MidAmerica Bank, FSB v. Charter One Bank, FSB*, 232 Ill. 2d 560, 565 (2009))).

¶ 38 It is the third function that causes divergence among the parties here. Defendant Saxen urges this court to find that the investigations the special investigator may conduct under the statute are limited to those crimes that have already come to the attention of the State's Attorney. Such a reading would place Gaither's traffic stops squarely outside the scope of section 3-9005(b).

¶ 39 In response, the State first argues that the record on appeal is insufficient to support or to allow this court to resolve defendant's contention in this regard. The State claims that defendant has not pointed to any further evidence, arguments, or discussion regarding this issue below. As noted earlier, the appellee can urge any point in support of the judgment on appeal, so long as the factual basis for such a point was before the trial court. *Travelers Casualty & Surety Co.*, 229 Ill. 2d at 470-71.

¶ 40 Here, it is clear from the record that aside from compliance with the fingerprint requirement, the trial court did, in fact, consider the issue of whether the statute even permitted Gaither's law enforcement activities in the first place. This is evidenced by counsel's argument on Saxen's amended motion to suppress, wherein he alleged that even if the State's Attorney had followed the proper procedure and complied with the fingerprint requirements, the State's Attorney was actually exceeding the authority granted under the statute. It is further evidenced by the trial court's order when it noted in granting defendants' motions to suppress that it believed the State's Attorney did have the statutory authority to appoint special investigators to conduct investigations with regard to drug trafficking. We simply cannot imagine what additional evidence or argument defendant would need to present in order for us to consider this alternative contention. This is particularly true in light of the fact that this issue is one of statutory interpretation and we have before us testimony about the formation of the SAFE unit generally and Gaither's testimony as to his conduct as a special investigator in these specific cases. Thus, the record is adequate to support our consideration of this issue.

¶ 41        Substantively, the State argues that the statute does not contain such a limitation, and this court should not add exceptions, limitations, or conditions that the legislature did not express. See *Board of Education of Gardner-South Wilmington High School District 73 v. Village of Gardner*, 2014 IL App (3d) 130364, ¶ 16. The phrase to "conduct investigations which assist the State's Attorney in the performance of his duties" is broad, encompassing all manner of investigatory activity. The State argues that such a reading is supported by section 3-9005(b)'s reference to section 7.06 of the State's Attorneys Appellate Prosecutor's Act, which necessarily provides investigators with all the powers possessed by policemen in cities and by sheriffs, including carrying firearms and conducting traffic stops. 725 ILCS 210/7.06(a) (West 2012).

¶ 42        The State's argument in this regard is similarly unpersuasive. If we were to accept that tortured construction, investigators would, in fact, be police officers, and the three enunciated duties of the appointed State's Attorney special investigators would be rendered superfluous. We cannot fathom how patrolling Interstate 80, issuing warning tickets, and confiscating contraband can be realistically viewed as "conducting investigations that assist the State's Attorney with his duties." The prosecution of drug dealers and traffickers is indisputably a duty of the State's Attorney; outfitting his own drug interdiction unit is not. Such a statutory construction would effectively give the State's Attorney the power to create and maintain the equivalent of his own police force. Taken to its furthest logical conclusion, the SAFE unit would be no different than the county sheriff's police. The legislature could not have intended and did not intend such a consequence. In our view, the legislature clearly intended that special investigators appointed by the State's Attorney have police powers to the extent necessary to assist the State's Attorney in cases brought before him and originated by traditional police agencies, or in cases where the police were unable or unwilling to investigate.

¶ 43        Even the name of the unit, the State's Attorney's Felony Enforcement unit, militates against a finding that the special investigators were merely assisting the State's Attorney in conducting investigations. Gaither actively sought out criminal activity and, as the name suggests, enforced the law. This is bolstered by Towne's testimony that he authorized Gaither to "go out and enforce the law." Gaither stated he was hired to look for narcotics traffickers that travel up and down the interstates and highways in La Salle County. Gaither's job description was to "arrest people who were smuggling narcotics or proceeds from narcotics up and down the interstates in Illinois in La Salle County." The General Assembly did not envision these investigators making traffic stops and writing traffic tickets or warnings.

¶ 44        We acknowledge that a State's Attorney is "vested with wide discretion in enforcing criminal laws" (*People v. Williams*, 147 Ill. 2d 173, 256 (1991) (citing *Marcisz v. Marcisz*, 65 Ill. 2d 206, 210 (1976))), and that in some circumstances a State's Attorney may investigate criminal activity. The State cites to *People v. Nohren*, 283 Ill. App. 3d 753, 758 (1996), where the court, quoting the ABA Standards for Criminal Justice noted that " '[a] prosecutor ordinarily relies on police and other investigative agencies for investigation of alleged criminal acts, but the prosecutor has an *affirmative responsibility to investigate suspected illegal activity* when it is not adequately dealt with by other agencies.' " (Emphasis in original.) *Nohren*, 283 Ill. App. 3d at 758 (quoting ABA Standards for Criminal Justice § 3-3.1(a), at 47 (3d ed. 1993)). However, *Nohren* ultimately held that that a State's Attorney could use a subpoena *duces tecum* to obtain the blood-alcohol test results of a defendant who had yet to be charged. *Nohren*, 283 Ill. App. 3d at 758-59.

¶ 45 That is a fundamentally different situation than what is occurring in La Salle County. The State's Attorney provided his SAFE unit officers with Ford Explorers replete with emergency police equipment to conduct traffic stops, as well as books to write traffic warnings and citations. Any vehicles seized by the SAFE team are taken to the Spring Valley police department, which receives 12.5% of money and property that is seized and forfeited.

¶ 46 Our supreme court has consistently recognized that a State's Attorney's investigative role is limited to the investigation of facts of an alleged criminal act when the police are in need of investigative assistance or when the investigation of alleged criminal activity is not adequately dealt with by the police. See, *e.g.*, *People v. Williams*, 147 Ill. 2d at 256; see also *People v. Wilson*, 254 Ill. App. 3d 1020, 1039 (1993) (stating that it is the general practice of a State's Attorney to stand ready and provide investigative assistance to the police). Seeking out criminal activity by virtue of patrolling the highway is a far cry from "standing ready" to assist police. The State presented no evidence that either the Illinois State Police, or the local police or sheriff's departments, needed assistance with drug interdiction. Nor was there any allegation that these other law enforcement agencies were not adequately addressing drug trafficking within the county. With the SAFE unit, the State's Attorney created yet another branch of law enforcement, the conduct of which falls well outside the duties contemplated by section 3-9005(b) for special investigators.

¶ 47 To be clear, our holding is not intended to limit the power of the State's Attorney except to the extent that we hold that he does not have the authority to equip his investigators with squad cars and ticket books for the purpose of patrolling the highways. In light of our resolution on this issue, we find it unnecessary to address the remaining issues raised by the parties, both in opposition to and in support of the trial court's rulings.

¶ 48 We accordingly find that the trial court did not err in granting defendants' motions to suppress where the actions of the State's Attorney's SAFE unit and special investigator Gaither exceeded the scope of section 3-9005(b).

¶ 49 CONCLUSION

¶ 50 For the foregoing reasons, the judgment of the circuit court of La Salle County is affirmed in each of the consolidated cases.

¶ 51 Affirmed.