NOTICE

Decision filed 02/22/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220182-U

NO. 5-22-0182

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| EDITH ELAINE ROTAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 21-L-65 |
| | ) | |
| UNLIMITED DEVELOPMENT, INC., and UDI #1 d/b/a | ) | |
| Parkway Manor, | ) | Honorable |
| | ) | Jeffrey A. Goffinet, |
| Defendants-Appellants. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justice McHaney* concurred in the judgment.
Justice Cates dissented.

**ORDER**

¶ 1    *Held*:   The trial court's order denying defendants' motion to compel arbitration and stay the proceedings is reversed where the claim is governed by federal law, the arbitration agreement delegated arbitrability to the arbitrator, and no argument related to the delegation clause was presented.

¶ 2    Defendants, Unlimited Development, Inc., and UDI #1 d/b/a Parkway Manor, appeal the trial court's order denying their motion to compel arbitration and stay the proceedings. We reverse.

_____

*Justice Wharton heard oral argument on this case. Upon his retirement, Justice McHaney was substituted and has reviewed the record, briefs, and audio recording of the oral argument.

1

¶ 3                                I. BACKGROUND

¶ 4        On June 1, 2021, plaintiff, Edith Rotan, filed a personal injury complaint asserting claims, *inter alia*, pursuant to the Illinois Nursing Home Care Act (210 ILCS 45/1-101 (West 2020)), alleging negligence against defendants related to her residency at Parkway Manor on or after June 11, 2019. On August 9, 2021, defendants moved to compel arbitration and stay the proceedings pursuant to the residency agreement and alleged addendums thereto, one of which contained an executed, two-page, stand-alone arbitration agreement. The motion was supported by an affidavit, copies of the executed documents, and a memorandum of law that argued the incorporation of the American Arbitration Association (AAA) rules within the arbitration agreement mandated the issues of arbitrability and scope be determined by an arbitrator, not a court. The contention was supported by numerous cases from almost every federal circuit (*Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1290 (10th Cir. 2017), *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989); *Contec Corp. v. Remote Solution Co*., 398 F.3d 205, 208 (2d Cir. 2005), *Cooper v. WestEnd Capital Management L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016), *Fallo v. High-Tech Institute*, 559 F.3d 874, 878 (8th Cir. 2009), *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)) as well as two unpublished federal district court decisions issued by the Northern District of Illinois. On October 21, 2021, defendant also filed a notice of filing persuasive authority citing *Taylor v. UDI #4, LLC*, 2021 IL App (4th) 210057-U.

¶ 5        On November 29, 2021, plaintiff filed her response arguing that neither the residency agreement, nor the arbitration agreement, were relevant to her claim of action against defendants, and, even if they were, the documents did not relate to each other. Relying on *Peterson v. Residential Alternatives of Illinois, Inc*., 402 Ill. App. 3d 240 (2010), plaintiff argued that

defendant's failure to incorporate by reference the arbitration agreement into the residency agreement doomed the motion to compel arbitration.

¶ 6    On December 1, 2021, defendants filed a reply that addressed the arguments raised, as well as those not raised, by plaintiff. Defendants noted that no argument claiming unconscionability, fraud, or duress was raised, nor was any argument presented regarding the delegation clause. Additional replies, filed by the parties on January 10, 2022, and January 12, 2022, provided no new arguments. On February 18, 2022, the parties presented oral arguments during which plaintiff conceded that, if the arbitration clause was valid, the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (2018)) applied.

¶ 7    On February 22, 2022, the trial court issued an order finding it had the authority to determine arbitrability pursuant to *Hartz v. Brehm Preparatory School, Inc.*, 2021 IL App (5th) 190327, the residency agreement and the arbitration agreement failed to reference or incorporate each other, and therefore could not be construed as one document pursuant to *Peterson*, 402 Ill. App. 3d at 246. Thereafter, the court denied defendants' motion to compel. Defendants appealed.

¶ 8                                II. ANALYSIS

¶ 9    An order to compel or stay arbitration is injunctive in nature and subject to interlocutory appeal under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001). "Generally, the standard of review for a decision on a motion to compel arbitration is whether there was a showing sufficient to sustain the circuit court's order." *Keefe v. Allied Home Mortgage Corp.*, 393 Ill. App. 3d 226, 229 (2009). However, if the trial court's order is based on "construction of the arbitration agreement," such appeal raises a question of law "subject to a *de novo* standard." *Peach v. CIM Insurance Corp.*, 352 Ill. App. 3d 691, 694 (2004). We agree

3

with the parties' assertions that the circuit court's decision was based solely on legal analysis. Therefore, our review is *de novo*.

¶ 10 The Federal Arbitration Act (FAA) empowers both state and federal courts to compel arbitration and stay any action in that court. 9 U.S.C. § 3 (2018); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006). The Illinois Supreme Court addressed the purpose of the FAA and provided guidance on its applicability in nursing home cases when holding that an anti-waiver provision of the Nursing Home Care Act was preempted by the FAA, stating:

> "The basic purpose of the FAA is to overcome the historical reluctance of courts to enforce agreements to arbitrate. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995). When Congress passed the FAA in 1925, it intended courts to enforce agreements by parties to arbitrate and to place such agreements on the same footing as other contracts. *Allied-Bruce*, 513 U.S. at 270-71. A state statute stands as an obstacle to the purposes of the FAA if it targets arbitration provisions for disfavored treatment not applied to other contractual terms generally. *Allied-Bruce*, 513 U.S. at 281. Similarly, state provisions form an obstacle if they 'take their meaning from the fact that a contract to arbitrate is at issue, or frustrate arbitration, or provide a defense to it.' *Securities Industry Ass'n v. Connolly*, 883 F.2d 1114, 1123 (1st Cir. 1989)." *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 41 (2010).

¶ 11 Section 2 of the FAA states:

> "A written provision in *** a contract *** to settle by arbitration a controversy thereafter arising out of such contract or transaction *** shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract ***." 9 U.S.C. § 2 (2018).

4

See also *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339-40 (2011).

¶ 12    Such grounds include " 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not *** defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* at 339 (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). "A recurring question under § 2 is who should decide whether 'grounds … exist at law or in equity' to invalidate an arbitration agreement." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008).

¶ 13    Typically, in deciding whether a party must be compelled to arbitrate under the FAA, the court first considers (1) whether the parties are bound by a given arbitration clause (arbitrability) and, if so, (2) whether the particular dispute falls within the scope of that valid agreement (scope). *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). However, an arbitration agreement may contract gateway issues, including arbitrability, scope, and in some instances, enforceability due to alleged unconscionability,[1] to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. ___, ___, 139 S. Ct. 524, 529 (2019) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010); see also *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)). When the issues are delegated to the arbitrator, the court must respect that choice even "if the argument that the arbitration agreement applies to the particular dispute is 'wholly groundless.' " *Id.* at ___, 139 S. Ct. at 528.

¶ 14    The type of gateway provision at issue is also relevant. For example, if the issue is scope, *i.e.*, whether a particular issue is covered by the arbitration agreement, and the arbitration clause

_____

[1]More specifically, if contractual validity is at issue due to unconscionability involving the contract as a whole, the validity issue must be decided by an arbitrator. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). Conversely, if the validity issue raised is solely related to the arbitration clause in a larger contract, or the delegation clause in a stand-alone arbitration agreement, the issue must be decided by the court. *Jackson*, 561 U.S. at 70-72.

language regarding whether scope was delegated to the arbitrator is ambiguous, the issue must be determined by the arbitrator. *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 62 (1995). Conversely, "the '*question of arbitrability*,' " *i.e.*, whether the parties agreed to submit a dispute to arbitration, is " 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' " (Emphasis in original.) *Howsam*, 537 U.S. at 83-84 (quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986)). "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute [citations], *** the question [of] 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." (Emphasis in original.) *First Options*, 514 U.S. at 943. When a contract delegates arbitrability to an arbitrator, courts must give full meaning to that delegation and refrain from passing on any issues of arbitrability. *Henry Schein, Inc.*, 586 U.S. at ___, 139 S. Ct. at 529-30.

¶ 15   Here the relevant arbitration language stated as follows:

"Without limiting any rights set forth in other provisions of this AGREEMENT, any and all disputes arising hereunder shall be submitted to binding arbitration and not to a court for determination. Arbitration shall commence after written notice is given from either party to the other, such arbitration shall be accomplished expeditiously in the county and state where the property which is the subject of this AGREEMENT is located[ ] and shall be conducted in accordance with the rules of the American Arbitration Association ('AAA'). The arbitration shall be conducted by three (3) arbitrators, one of whom shall be appointed by FACILITY and one of whom shall be appointed by RESIDENT. ***

Notwithstanding the parties['] intent to submit any controversy or claim arising out of or relating to this AGREEMENT or any other document signed or initialed in connection

6

with this AGREEMENT to arbitration, in the event that a court of competent jurisdiction shall determine[,] or a relevant law shall provide that a particular dispute is not subject to the arbitration provisions of this Section, then the parties agree to the following provisions:

> a. Each party believes that justice will be served if issues regarding this AGREEMENT are heard by a judge in a court proceeding, and not a jury ***. ***

> b. The party prevailing in such dispute shall be entitled to recover all costs incurred, including reasonable attorney's fees and costs ***."

¶ 16    The trial court denied defendant's motion to compel arbitration and stay the proceedings after first relying on *Hartz*, 2021 IL App (5th) 190327, to find it had the authority to address arbitrability and later on *Peterson*, 402 Ill. App. 3d 240, finding the arbitration agreement was not incorporated into the nursing home agreement. Given the precedent established in *Hartz*, as well as the nearly identical facts shown in *Peterson* with those in the current case, we are compelled to explain why *Hartz* is distinguishable to such extent its relevance is questionable and reliance on *Peterson* is unwarranted.

¶ 17    In *Hartz*, the plaintiff sued defendants after her child was expelled from Brehm Preparatory School (Brehm). *Hartz*, 2021 IL App (5th) 190327, ¶ 11. Brehm moved to dismiss the lawsuit based on an arbitration clause contained within the admission contract. *Id*. In response, plaintiffs argued that the arbitration clause, as well as the entire Brehm contract, were substantively and procedurally unconscionable. *Id*. ¶ 12. They further argued that their tort claims were not subject to the arbitration clause. *Id*. After finding the contract lacked mutuality, the trial court denied Brehm's request for dismissal and Brehm appealed. *Id*. ¶¶ 13-14. On appeal, this court found that "the trial court's inquiry [was] limited to 'certain gateway matters,' such as whether the parties [had] a valid arbitration clause, and if so, whether the issues in dispute [fell] within the scope of

7

the arbitration clause." *Id*. ¶ 42 (citing *Buckeye Check Cashing, Inc.*, 546 U.S. at 444-46, and *Jensen v. Quik International*, 213 Ill. 2d 119, 123-24 (2004)). The court further noted that "challenges to the validity of the contract as a whole, rather than the arbitration clause within the contract, [were] matters to be considered by the arbitrator in the first instance." *Id*. (citing *Buckeye Check Cashing, Inc*., 546 U.S. at 445-46, and *Bess v. DirecTV, Inc*., 381 Ill. App. 3d 229, 236 (2008)).

¶ 18    In *Hartz*, although the arbitration clause contained language adopting the "Commercial Rules of the American Arbitration Association" (*id*. ¶ 8), Brehm presented no argument that those rules delegated arbitrability to the arbitrator as was argued by defendants herein. Without such argument, this court's finding in *Hartz*, that the trial court was required to determine arbitrability (*id*. ¶ 42), was correct. Further, since the plaintiffs in *Hartz* argued that the arbitration clause was unconscionable, and Brehm also failed to argue that validity of the contract was also to be determined by the arbitrator pursuant to the AAA rules, the appellate court's remand order requiring the trial court to consider the unconscionability issue as to the arbitration clause (*id*. ¶ 56) was also correct.

¶ 19    Here, plaintiff presented no claim of unconscionability, or any contract defense, and therefore, the issue is whether the trial court had the authority to determine arbitrability. Unlike the defendant in *Hartz*, defendant here relies on the AAA rules to argue the trial court did not have the authority to determine arbitrability. Accordingly, *Hartz*, provides no guidance.

¶ 20    The trial court's reliance on *Peterson*, 402 Ill. App. 3d 240, is also misplaced. In *Peterson*, plaintiff filed an amended two-count complaint alleging negligent acts and omissions by the nursing home. *Id.* at 241. In response, the nursing home initially filed an answer; however, one month later, the nursing home filed a motion to dismiss and compel arbitration. *Id*. at 242. The

8

motion was based on a stand-alone arbitration agreement executed by the parties that was attached as an exhibit to the nursing home's motion. *Id*. Some of the language in *Peterson* was identical to that seen in the case at bar. *Id*. at 242-43. After additional briefing on the arbitration issue, the trial court found the arbitration contract was enforceable and granted the nursing home's motion to dismiss and compel arbitration. *Id*. at 243.

¶ 21      On review, the *Peterson* court first addressed the fact that the arbitration contract was not contained within the nursing home contract. *Id*. at 245. After noting Illinois Supreme Court interpretive principle addressing documents "executed at the same time, by the same parties, and for the same purpose are regarded as one contract under certain circumstances" (*id*. (citing *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007))), *Peterson* also required the documents to specifically incorporate each other, in order for the documents to be construed together. *Id*.

¶ 22      The *Peterson* court also relied on language in *Sandra Frocks, Inc. v. Ziff*, 397 Ill. 497, 504 (1947), indicating that documents executed simultaneously could not operate as a "unified agreement when 'a contrary contention' " was manifested. *Id*. Thereafter, the *Peterson* court held that the lack of any litigation restriction in the nursing home agreement was contrary to the arbitration contract containing litigation restrictions and such dichotomy triggered the exception language stated in *Ziff*. *Id*. at 246.

¶ 23      It is unnecessary to address the propriety of the *Peterson* analysis because *Peterson* was decided by the Third District under the Illinois Uniform Arbitration Act (710 ILCS 5/1 *et seq*. (West 2008)). See *Peterson*, 402 Ill. App. 3d at 245. As such, the case is persuasive authority, at most. Conversely, the case at bar is governed by the FAA, and therefore, we are required to follow Supreme Court precedent discussed below. See *Ammons v. Canadian National Ry. Co.*, 2019 IL

9

124454, ¶ 18 (" 'United States Supreme Court interpretation of federal law is clearly binding on this court.' " (quoting *State Bank of Cherry v. CGB Enterprises, Inc*., 2013 IL 113836, ¶ 33)).

¶ 24     We also note the timing of the *Peterson* decision compared with the timing of the United States Supreme Court decision in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010). *Peterson* was issued on June 7, 2010, exactly two weeks prior to the June 21, 2010, decision in *Rent-A-Center*. As such, *Peterson* did not have the benefit of the United States Supreme Court's guidance on interpreting stand-alone arbitration contracts. Given the differences between the decisions in *Peterson* and *Rent-A-Center*, we cannot state with certainty that *Peterson* would not have been decided differently if that court had the benefit of *Rent-A-Center*'s guidance. Regardless, we find *Rent-A-Center* both instructive and binding.

¶ 25     Just as seen in the case at bar, in *Rent-A-Center*, the arbitration agreement was not contained within a larger contract but was instead a separate, stand-alone, arbitration agreement. *Rent-A-Center*, 561 U.S. at 72. The Court explained that the delegation provision was "the provision that gave the arbitrator 'exclusive authority to resolve any dispute relating to the … enforceability … of this Agreement.' " *Id*. at 71. "The 'remainder of the contract' " was the remainder of the "agreement to arbitrate claims arising out of Jackson's employment with Rent-A-Center." *Id*. Because section 2 of the FAA operated "on the specific 'written provision' to 'settle by arbitration a controversy' that the party seeks to enforce," the Court found that "unless Jackson challenged the delegation provision specifically," the Court "must treat [the arbitration agreement] as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 72. After examining Jackson's challenges to the arbitration clause, the Court ultimately found that Jackson did not specifically challenge the

delegation provision until the case reached the United States Supreme Court and therefore found the challenge was "too late." *Id*. at 72-76.

¶ 26    Applying the analysis in *Rent-A-Center* to the case at bar, we initially find it was unnecessary for the trial court to determine whether the stand-alone arbitration agreement was part of the nursing home admission documents. Instead, the trial court needed only to determine if any challenge to the delegation provision contained within the arbitration agreement was presented. Here, plaintiff concedes that no delegation provision challenge was raised, and therefore, all that was left for the trial court was to determine whether the arbitration agreement delegated arbitrability and scope, *i.e.*, the gateway issues, to the arbitrator.

¶ 27    Here, two provisions of the arbitration agreement potentially address who will determine arbitrability. The first is found in the contract language that stated, "any and all disputes arising hereunder" were to be "submitted to binding arbitration." The second is based on the incorporation of the AAA rules into the arbitration agreement. If either of these clauses provide "clear and unmistakable" evidence of an agreement to delegate arbitrability to the arbitrator, plaintiff must be compelled to arbitration. *First Options*, 514 U.S. at 944.

¶ 28    We do not find the parties' agreement to arbitrate "any and all disputes" arising under the arbitration agreement or "any other document signed or initialed in connection with" the arbitration agreement sufficient in and of itself to evidence a "clear and unmistakable" delegation of arbitrability to the arbitrator. While rules of contract interpretation require this court "to give full effect to the parties' choice of that word 'any' " (*Dustman v. Advocate Aurora Health, Inc*., 2021 IL App (4th) 210157, ¶ 53), "the law treats silence or ambiguity about the question '*who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question '*whether* a particular merits-related dispute is arbitrable because it is within the scope

11

of a valid arbitration agreement.' " (Emphases in original.) *First Options*, 514 U.S. at 944-45. As noted above, unlike scope, which has a presumption that the issue will be decided by an arbitrator (*Mastrobuono*, 514 U.S. at 62), arbitrability has no presumption and the Supreme Court requires "clear and unmistakable" delegation of this issue to the arbitrator. *AT&T Technologies, Inc.*, 475 U.S. at 649. As no additional language was included in the arbitration agreement to delegate arbitrability in the "any and all dispute" language, and no definition of "dispute" was provided, we find this language insufficient, in and of itself, to delegate the issue of arbitrability to the arbitrator.

¶ 29   The second provision, which incorporated the AAA rules, is more compelling. Pursuant to Rule 1(a) of the AAA rules, "[t]he parties shall be deemed to have made [the AAA] rules a part of their arbitration agreement when they have provided for arbitration by the [AAA] ***." AAA Commercial Arbitration Rules, R-1(a). The AAA rules empower the arbitrator "to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement *or to the arbitrability of any claim* or counterclaim" and "to determine the existence or validity of a contract of which an arbitration clause forms a part." (Emphasis added.) AAA Commercial Arbitration Rules, R-7(a) and (b).

¶ 30   Federal courts have long held that incorporation of specific arbitration rules, like AAA's rules, into an arbitration agreement is sufficient to find "clear and unmistakable" evidence that the parties intended to delegate the question of arbitrability to an arbitrator. *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.") (collecting cases). Similar conclusions were reached by Illinois federal courts and were previously noted in an Illinois state court. *Wal-mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d

12

713, 720 (N.D. Ill. 2014); *Allscripts Healthcare, LLC v. Etransmedia Technology, Inc.*, 188 F. Supp. 3d 696, 701 (N.D. Ill. 2016); *LRN Holding, Inc. v. Windlake Capital Advisors, LLC*, 409 Ill. App. 3d 1025, 1037 (2011) (Wright, J., specially concurring).

¶ 31　The United States Supreme Court has not specifically addressed this issue; however, the Court did address the amount of weight that should be attributed to the parties' contractual delegation of authority. See *Henry Schein, Inc.*, 586 U.S. at ___, 139 S. Ct. at 528 ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."). It is noteworthy that the United States Supreme Court acknowledged that the parties' agreement in *Henry Schein, Inc.* incorporated the AAA rules. *Id*. Regarding the delegation of arbitrability, the Court further stated:

> "We must interpret the Act as written, and the Act in turn requires that we interpret the contract as written. When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* at ___, 139 S. Ct. at 529.

¶ 32　"[I]n the absence of a United States Supreme Court decision, the weight this court gives to federal circuit and district court interpretations of federal law depends on factors such as uniformity of law and the soundness of the decisions." *State Bank of Cherry*, 2013 IL 113836, ¶ 33. "[I]f the lower federal courts are uniform on their interpretation of a federal statute, this court, in the interest of preserving unity, will give *considerable weight* to those courts' interpretations of federal law and find them to be highly persuasive." (Emphasis in original.) *Id.* ¶ 35. "If, however, the federal

13

courts are split, we may elect to follow those decisions we believe are better reasoned." *Ammons*, 2019 IL 124454, ¶ 18.

¶ 33 The majority of case law addressing the incorporation of an institution's rules into the arbitration contract, thereby, delegating arbitrability to the arbitrator, instead of the trial court, has been soundly accepted. In *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020), the court stated:

"[E]very one of our sister circuits to address the question—eleven out of twelve by our count—has found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.' [(collecting cases)] And the one remaining circuit has precedent suggesting that it would join this consensus. See *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272-73 (7th Cir. 1976) (relying on the incorporation of the AAA Rules to find that the parties had agreed to binding arbitration). Indeed, it's possible that our circuit has *already* joined too. See *McGee* [*v. Armstrong*], 941 F.3d [859,] 866 [(6th Cir. 2019)]. But to the extent that there's any ambiguity in our prior decisions, we officially do so today." (Emphasis in original.)

¶ 34 There are, however, some cases that reach contrary results based on the lack of sophistication attributed to a party. See *Meadows v. Dickey's Barbeque Restaurants, Inc.*, 144 F. Supp. 3d 1069, 1078-79 (N.D. Cal. 2015); *Nagrampa v. MailCoups*, 469 F.3d 1257, 1282 (9th Cir. 2006). We note, however, these contrary decisions are typically based on contract defense claims of either procedural or substantive unconscionability. *Meadows*, 144 F. Supp. 3d at 1079 (collecting cases regarding franchise agreements). "Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice"

14

(internal quotation marks omitted) (*Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 60 (2011)), including "situation[s] where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and *** a lack of bargaining power" (*Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 100 (2006)). "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed, asking whether the terms are so one-sided as to oppress or unfairly surprise an innocent party." (Internal quotation marks omitted.) *Phoenix Insurance Co.*, 242 Ill. 2d at 60.

¶ 35    Admittedly, the incorporation of the AAA rules that delegate arbitrability to the arbitrator with no indication of what is contained in those rules may be considered harsh or far from "clear and unmistakable" as required by the United States Supreme Court. This is especially true when the parties are not corporate entities familiar with the AAA rules or even the law. Indeed, whether such principle should apply to both sophisticated and unsophisticated parties remains debatable, despite case law accepting application of the premise to both. See *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015) (collecting cases); *McGee v. Armstrong*, 941 F.3d 859, 863, 865-66 (6th Cir. 2019); *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 548-49, 552 (5th Cir. 2018).

¶ 36    Here, however, we find dispositive the fact that plaintiff presented no argument that any language in the arbitration agreement, say nothing of the required delegation clause, was either substantively or procedurally unconscionable. Indeed, plaintiff's counsel confirmed during oral argument that no such argument was ever presented. As such, pursuant to the directives enunciated in *Rent-A-Center* and *Henry Schein, Inc.*, we hereby reverse the trial court's denial of defendants' motion to compel arbitration and stay the proceedings.

¶ 37    We further note that while both parties presented compelling arguments as to whether the arbitration agreement was even applicable in the underlying lawsuit, this issue relates to the scope

15

of arbitration. Pursuant to the incorporation of the AAA rules, this issue is also delegated to the arbitrator. AAA Commercial Arbitration Rules, R-7(a). Therefore, we also vacate the trial court's findings on this issue.

¶ 38    Finally, we are compelled to address Justice Cates' dissent. First, the dissent alleges that we "assume" the "contracting parties agreed to arbitrate arbitrability" and that we made "a new contract by supplying provisions or giving plain and unambiguous terms a distorted construction." *Infra* ¶ 51. We disagree. The dissent is premised on an erroneous belief that we supplied a specific set of arbitration rules, namely the AAA Commercial Arbitration Rules, when those specific rules were not set forth in the arbitration agreement or agreed to by the parties. As shown above, the arbitration agreement language mandated that arbitration be conducted in accordance with the rules of the American Arbitration Association (AAA).

¶ 39    We agree that the AAA has "dozens of sets of 'active rules' depending upon the type of the agreement" or dispute. However, what is not noted by the dissent is that every set of rules, whether commercial or consumer-based, contain the same language delegating arbitrability to the arbitrator. See AAA Commercial Arbitration Rules, R-7(a) and (b); AAA Consumer Rules, R-14(a) and (b). As such, we disagree that our reliance on any specific set of AAA rules dictated the outcome herein or altered the parties' contractual obligations. The issue was determined by the parties' agreement to arbitrate under the AAA rules.

¶ 40    Second, the dissent addresses plaintiff's alleged unsophistication. We note, however, this issue was not raised by plaintiff's counsel, either before the trial court or in this appeal, and no evidence on this issue is contained in the record. As such, we question the prudence of the dissent's classification based solely upon plaintiff's temporary need for rehabilitative services at a nursing home following surgery.

16

¶ 41    Finally, the dissent claims that our decision fails to address whether the arbitration agreement covered disputes arising out of the plaintiff's stay at Parkway Manor and argues that *Peterson* controls on this issue. We disagree. The issue of whether an arbitration agreement covers a dispute is one of scope, and such decisions are deferred to the arbitrator. See *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). It is well-established that any confusion regarding the scope of an arbitration agreement under the FAA is left to the arbitrator. *Mastrobuono*, 514 U.S. at 62.

¶ 42    It bears repeating that plaintiff's argument, both before the circuit court, as well as here, was limited solely to its reliance on *Peterson*, 402 Ill. App. 3d 240. However, at no time did the *Peterson* court address its authority, or potential lack of authority, to determine the issue presented therein. Indeed, there is no indication that the AAA rules were incorporated into the *Peterson* arbitration agreement or, even if they were, that the delegation clause found within the AAA rules was an issue raised by the nursing home.

¶ 43    Here, the delegation clause was argued. As such, we cannot ignore the argument presented and decline to place reliance on a case that never considered the issue. Since *Peterson*, numerous United States Supreme Court decisions, addressing the FAA, have addressed the enforcement of contractual language excising the court's authority to determine gateway issues such as arbitrability, scope, existence, and validity of an arbitration clause, and delegating the authority to an arbitrator. See *Rent-A-Center*, 561 U.S. at 68-69; *Mastrobuono*, 514 U.S. at 62; *Moses H. Cone*

17

*Memorial Hospital*, 460 U.S. at 24-25; *First Options*, 514 U.S. at 943-44; *Henry Schein, Inc.*, 586 U.S. at \_\_\_, 139 S. Ct. at 528.

¶ 44    Here, there is no dispute that the parties entered into an arbitration agreement and the arbitration agreement incorporated the AAA rules. Under those rules—whether for commercial or consumer purpose—the arbitrator's authority extends to "any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Commercial Arbitration Rules, R-7(a) and (b); AAA Consumer Rules, R-14(a) and (b). Therefore, any opinion regarding the relation between the arbitration agreement and the residency contract, as seen in *Peterson*, or the relation of those documents with any of the other documents executed during admission, is not for this court.

¶ 45    The unanimous *Schein* decision clearly expressed its disagreement with courts that "short-circuit the process" by ignoring the delegation clause; *Schein* requires courts to "respect the parties' decision as embodied in the contract." *Henry Schein, Inc.*, 586 U.S. at \_\_\_, 139 S. Ct. at 528-29. Such respect requires this case to proceed to arbitration leaving for the arbitrator any issues related to the scope, validity, existence, enforcement, or arbitrability of the arbitration agreement and precludes our reliance on *Peterson*. As such, any opinion by this court on any of these issues is unwarranted.

¶ 46                                        III. CONCLUSION

¶ 47    For the foregoing reasons, we vacate the trial court's findings and reverse its order denying defendants' motion to compel arbitration and stay the proceedings.

¶ 48    Reversed.

¶ 49    JUSTICE CATES, dissenting:

18

¶ 50 In reversing the trial court's order denying the motion to compel arbitration, the majority disregarded two well-settled principles of law. First, a court should not assume that contracting parties agreed to arbitrate arbitrability unless there is "clear and unmistakable" evidence that they did so. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Second, a court cannot make a new contract by supplying provisions or giving plain and unambiguous terms a distorted construction. *Thompson v. Gordon*, 241 Ill. 2d 428, 449 (2011); *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645, ¶ 25. In this case, the majority gave lip service to the rule that whether the parties agreed to submit a dispute to arbitration is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. After acknowledging this well-settled rule of law, the majority then proceeds to create a new arbitration agreement by supplying a specific set of arbitration rules—the AAA Commercial Arbitration Rules—when those rules were not set forth in the Arbitration Agreement or agreed to by the parties. The majority then found that their newly minted rules constituted clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. Taking the arbitration agreement as it is, without modifying or adding terms, I find that the parties' agreement is ambiguous as to who should decide questions of arbitrability and that the reference to an unspecified set of rules of the AAA does not resolve that question. In the absence of clear and unmistakable evidence of the parties' intent to submit the question of arbitrability to the arbitrator, the trial court had the authority to decide arbitrability. Therefore, I dissent from the majority's conclusions in this regard.

¶ 51 The majority also concluded that the trial court's reliance on *Peterson v. Residential Alternatives of Illinois, Inc.*, 402 Ill. App. 3d 240 (2010), was misplaced. I do not agree. The *Peterson* court analyzed substantively similar versions of the same agreements at issue here, using basic principles of contract law, and the court's analysis is useful. Considering the Arbitration

19

Agreement and Residency Contract at issue, with the basic principles of contract law in mind, I do not find that the parties clearly expressed an intent to arbitrate controversies arising out of the Residency Contract or the nursing home care the plaintiff received at Parkway Manor. The Arbitration Agreement plainly referred to property, not personal injuries. Therefore, I would affirm the trial court's order denying the motion to compel arbitration. Accordingly, I respectfully dissent.

¶ 52                                                    *Background*

¶ 53      In this case, the plaintiff, then 81 years old, filed a complaint against the defendants, Unlimited Development, Inc., and UDI #1 d/b/a Parkway Manor, asserting a claim under the Illinois Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2020)). The plaintiff alleged that she sustained personal injuries while a resident of Parkway Manor, a nursing home facility owned and/or operated by the defendants, and that her injuries resulted from the negligent care provided by defendants' agents and employees.

¶ 54      The defendants moved to compel arbitration pursuant to the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (2018)), asserting that upon admission to Parkway Manor, the plaintiff signed an Arbitration Agreement and a Residency Contract. The defendants claimed that the Arbitration Agreement was an addendum to the Residency Contract; that it bound the plaintiff to arbitrate any and all disputes that arose from her stay at Parkway Manor; and, that it contained a delegation provision that authorized an arbitrator to decide threshold matters, including arbitrability. The defendants further claimed that the delegation provision specified that the arbitration would be conducted "in accordance with the rules of the American Arbitration Association ('AAA')," and that the incorporation of the AAA rules constituted clear and unmistakable evidence of the parties' intent to arbitrate questions of arbitrability. The defendants then quoted from the AAA's "Commercial Arbitration Rules and Mediation Procedures," specifically, Rule R-7(a), and argued

that under this rule, the arbitrator had the power to rule on his or her own jurisdiction, including issues of arbitrability and scope of the arbitration agreement. The defendants also argued that the federal courts have repeatedly found that the incorporation of a specific set of arbitration rules into an arbitration agreement constituted clear and unmistakable evidence that the parties agreed to delegate the question of arbitrability to the arbitrator. The defendants attached the Residency Contract and Arbitration Agreement in support of their motion.

¶ 55    In response, the plaintiff claimed that the Residency Contract and the Arbitration Agreement were "insufficient in both form and substance." The plaintiff argued that neither the Residency Contract nor the Arbitration Agreement applied to her cause of action, and that neither document contained a provision evidencing a clearly expressed intent to arbitrate disputes arising out of the Residency Contract. The plaintiff noted that substantively identical agreements were found unenforceable in *Peterson v. Residential Alternatives of Illinois, Inc*., 402 Ill. App. 3d 240, 242-43 (2010). Relying on the analysis in *Peterson*, the plaintiff argued that the Residency Contract and the Arbitration Agreement were unrelated; that neither document incorporated the other; and that neither document contained terms demonstrating an intent that they be read together. The plaintiff claimed the documents should not be construed as one contract because there was no indication they were signed as part of a single transaction.

¶ 56    In support of her arguments, the plaintiff attached the plaintiff's Parkway Manor Resident Face Sheet, excerpts from the discovery depositions of Karen Weirauch and Tenia Calhoon, and an affidavit from the plaintiff. According to the Parkway Manor Resident Face Sheet, the 79-year-old plaintiff was transferred from a hospital to the Bounce Back Unit at Parkway Manor on June 11, 2019, at 3:49 p.m. At the time of the plaintiff's admission to Parkway Manor, Tenia Calhoon was the administrator and Karen Weirauch was the assistant to the director of admissions. Neither

21

Calhoon, nor Weirauch, had a specific memory of conversations or events surrounding the execution of the plaintiff's admissions paperwork. In an affidavit dated January 7, 2022, the plaintiff stated that she was admitted to Parkway Manor to recover from knee surgery. The plaintiff had no memory of the circumstances surrounding the signing of her admissions paperwork. She stated that if she had known of the ramifications of the Arbitration Agreement, she would have declined to sign it.

¶ 57 In a supplemental response, the defendants asserted that the Arbitration Agreement and the Residency Contract should be read together because the documents were executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction. The defendants claimed that all of the documents in the plaintiff's admissions packet had been signed on June 11, 2019. They attached the following 13 documents from the admissions packet as supporting exhibits: Authorization for Release of Health Information, New Resident Questionnaire, Addendum to Residency Agreement, Subpart S Eligibility Screen, Medicare Secondary Payor Questionnaire, Skilled Nursing Facility Advance Beneficiary Notice, Insurance Billing, Exhaustion of Resident Funds, Designated Authorized Representative Form, Courtesy Technical Denial Letter, Consent to Use Photograph/Video for Media Purposes, Notice of Privacy Practices, and Information Acknowledgment. The Arbitration Agreement and the Residency Contract had been previously filed as exhibits.

¶ 58 After considering the arguments of the parties, the trial court denied the defendants' motion to compel arbitration. The court initially determined that it had authority to decide gateway issues of arbitrability. The court then found that the Residency Contract and the Arbitration Agreement could not be construed as one contract, and that the Arbitration Agreement did not contain "a clearly expressed intent to arbitrate controversies arising out of the separate Residency Contract."

22

¶ 59                    *The Delegation Clause & Arbitrability*

¶ 60    An arbitration agreement is a matter of contract. The primary objective in interpreting a contract is to give effect to the intent of the parties. *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007). The language of the contract, given its plain and ordinary meaning, is the best indication of the parties' intent. *Gallagher*, 226 Ill. 2d at 233. A court will consider the document as a whole, viewing each part in light of the others. *Gallagher*, 226 Ill. 2d at 233. The parties' intent may not be gathered from detached portions of a contract or from any clause or provision standing by itself. *Gallagher*, 226 Ill. 2d at 233. A court cannot alter, change, or modify existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented. *Thompson*, 241 Ill. 2d at 449; *Gallagher v. Lenart*, 367 Ill. App. 3d 293, 301 (2006). A court cannot make a new contract by supplying provisions or giving plain and unambiguous terms a distorted construction. *Liu*, 2019 IL App (1st) 182645, ¶ 25.

¶ 61    While arbitration is a favored method of dispute resolution, courts have consistently cautioned that an agreement to arbitrate is a matter of contract, and that arbitration is a matter of consent, not coercion. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478-79 (1989); *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 55. Arbitration agreements are placed on an equal footing with other contracts, not above them. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Like other contracts, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. 9 U.S.C. § 2 (2018); *Rent-A-Center*, 561 U.S. at 68. Parties are "bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language," and their "agreement will not be extended by construction or implication." *Salsitz v. Kreiss*, 198 Ill. 2d 1, 13 (2001).

23

¶ 62    Here, the defendants moved to compel arbitration under the FAA (9 U.S.C. § 1 *et seq.* (2018)). The FAA empowers state courts and federal courts to stay an action and compel arbitration upon being satisfied that the issue involved in the action or proceeding is referable to arbitration under a written agreement to arbitrate. See 9 U.S.C. §§ 2, 3 (2018).

¶ 63    Ordinarily, when presented with a motion to compel arbitration under the FAA, the court will decide certain "gateway" questions, such as whether the parties have a valid arbitration agreement and whether that agreement covers a particular dispute or controversy. *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002). That said, the parties may agree to arbitrate not only the merits of any dispute that arises from their contract, but also "gateway" questions of arbitrability. See *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. ___, ___, 139 S. Ct. 524, 529-30 (2019). When considering whether the parties delegated gateway questions of arbitrability to an arbitrator, courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clear and unmistakable" evidence that they did so. *First Options*, 514 U.S. at 944-45; *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986). As to that matter, the law treats silence or ambiguity about who should decide arbitrability differently from the way it treats silence or ambiguity about whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement. *First Options*, 514 U.S. at 944-45. Unless the parties "clearly and unmistakably" provide otherwise, the question of who should decide whether the parties agreed to arbitrate arbitrability is a matter for the court, not the arbitrator. *First Options*, 514 U.S. at 944.

¶ 64    The Arbitration Agreement at issue provided in pertinent part:

"Without limiting any rights set forth in other provisions of this AGREEMENT, *any and all disputes arising hereunder* shall be submitted to binding arbitration and not to a court for determination. Arbitration shall commence after written notice is given from either party to the other, such arbitration shall be accomplished expeditiously in the county and state where *the property which is the subject of this AGREEMENT* is located, and shall be conducted in accordance with the rules of the American Arbitration Association ('AAA'). \*\*\*

Notwithstanding the parties intent to submit any controversy or claim arising out of or relating to this AGREEMENT or any other document signed or initialed in connection with this AGREEMENT to arbitration, *in the event that a court of competent jurisdiction shall determine or a relevant law shall provide that a particular dispute is not subject to the arbitration provisions* of this Section," then the parties agree that (a) the court will decide the dispute, waiving a jury trial, and (b) the prevailing party will be entitled to reasonable costs and attorney fees. (Emphases added.)

¶ 65    In this case, the issue is whether the delegation clause in this Arbitration Agreement reserved the question of arbitrability for the circuit court, or, whether it clearly and unmistakably delegated arbitrability to the arbitrator. In addressing this issue, the majority considered two provisions in the delegation clause that potentially addressed who should determine arbitrability. The first provision indicated that that "any and all disputes" arising under the arbitration agreement or any other document signed or initialed in connection with that agreement would be submitted to binding arbitration. The majority concluded the parties' agreement to arbitrate "any and all disputes" was not sufficient, by itself, to constitute clear and unmistakable evidence of an intent to delegate the question of arbitrability to the arbitrator. The majority then considered the provision

25

incorporating "the rules of the American Arbitration Association ('AAA')." For unexplained reasons, the majority decided to incorporate a specific set of rules—the AAA Commercial Rules of Arbitration—into the delegation clause, even those rules were not identified in the delegation clause or the Arbitration Agreement. Upon adding a new term to the delegation clause, the majority then concluded that the incorporation of those specific rules constituted clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.

¶ 66    I agree that the "any and all disputes" language does not evidence a clear and unmistakable delegation of arbitrability to the arbitrator. As the majority reasoned, the agreement provided no definition of "disputes," and the delegation clause did not expressly provide that disputes over arbitrability would be decided by the arbitrator. In addition, there are two conflicting provisions within the delegation clause that cast doubt on the parties' intent to arbitrate arbitrability. The initial provision in the delegation clause voiced an intent by the parties to submit "any and all disputes" to arbitration. But there is a subsequent provision in which the parties recognized and agreed that notwithstanding this intent, if a court of competent jurisdiction determined that a particular dispute was not subject to arbitration, then the court would decide the dispute without a jury. Thus, the language in the latter provision plainly provided that a court, not an arbitrator, would decide disputes arising under the agreement, including questions of arbitrability and scope. The majority failed to consider this latter provision in its analysis. To ignore this language indicating the parties' intent that arbitrability was a matter for judicial determination would render the provision superfluous. A reviewing court will not interpret a contract in such a way as to render some provisions meaningless. See generally *Thompson*, 241 Ill. 2d at 442. Given the undefined terms and the conflicting provisions, I do not find clear and unmistakable evidence that the parties agreed to arbitrate questions of arbitrability. Indeed, the plain language in the delegation clause

26

provided compelling evidence that the parties recognized that the court should decide the question of arbitrability.

¶ 67   The majority next considered the reference to the "rules of the AAA" contained in the Arbitration Agreement and concluded that this provision constituted a clear and unmistakable intent to arbitrate arbitrability. Such a conclusion is in error, and I adamantly disagree for the reasons that follow.

¶ 68   The language in the delegation clause provided that the arbitration "shall be conducted in accordance with the rules of the American Arbitration Association ('AAA')." The AAA has dozens of sets of "active rules" depending upon the type of agreement,[2] and the delegation clause provides no indication as to which set of rules was intended or applicable. The delegation provision did not incorporate the AAA Commercial Rules of Arbitration or any other specific and ascertainable set of rules that would empower the arbitrator to decide issues of arbitrability. Nevertheless, the majority has written into the agreement a specific set rules of rules of the AAA —the AAA Commercial Rules of Arbitration, and quoted from one of those rules, R-7 of the AAA Commercial Arbitration Rules, which empowers arbitrators to rule on their own jurisdiction, and other gateway matters of arbitrability (*supra* ¶¶ 30, 38). Nothing within the delegation clause or the Arbitration Agreement supports a finding that the parties intended to incorporate the AAA Commercial Rules. The majority has essentially created a new arbitration agreement by supplying the AAA Commercial Arbitration Rules even though those rules were not set forth in the Arbitration Agreement or agreed to by the parties. The majority then finds that those newly minted rules constitute clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.

---

[2]See https://www.adr.org/active-rules (last visited Feb. 15, 2023).

¶ 69    A well-settled principle of contract law counsels that a court cannot alter, change, or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented. See *Thompson*, 241 Ill. 2d at 449; *Gallagher*, 367 Ill. App. 3d at 301. The majority's decision to fill in and rely upon the AAA Commercial Rules of Arbitration as evidence of an intent to arbitrate arbitrability runs afoul of long-standing principles of contract law. Additionally, there is a presumption against provisions that could have been easily included in a contract but were not. *Thompson*, 241 Ill. 2d at 449; *Gallagher*, 367 Ill. App. 3d at 301. In writing the AAA Commercial Rules into the delegation clause, the majority added a new set of arbitration rules that was not negotiated or agreed to by the parties. Furthermore, the parties could have incorporated these specific rules into their agreement. They did not—neither should this court. Therefore, the majority erred in writing the AAA Commercial Rules into the arbitration agreement and relying upon those rules to find an agreement to arbitrate arbitrability.

¶ 70    Subsequently, and in response to this point, it appears that the majority conducted some research into the numerous sets of rules of the AAA. In support of its decision to supply a new term to the parties' agreement, the majority reasons:

> "We agree that the AAA has 'dozens of sets of "active rules" depending upon the type of the agreement' or dispute. However, what is not noted by the dissent is that every set of rules, whether commercial or consumer-based, contain the same language delegating arbitrability to the arbitrator. See AAA Commercial Arbitration Rules, R-7(a) and (b); AAA Consumer Rules, R-14(a) and (b). As such, we disagree that our reliance on a specific set of AAA rules dictated the outcome herein or altered the parties' contractual obligations." *Supra* ¶ 40.

28

Again, neither of these specific sets of rules—the commercial or consumer-based rules—is found within the Arbitration Agreement or the delegation clause at issue. Furthermore, while my colleagues have been able to conduct a fair amount of research on the dozens of sets of rules of the AAA, there is no evidence in the record that the plaintiff had a similar opportunity. Nonetheless, the fact remains that the parties did not identify a specific and ascertainable set of rules. Unlike my colleagues, I do not agree that a vague reference to the rules of the AAA constitutes clear and unmistakable evidence of an intent to delegate questions of arbitrability to the arbitrator.

¶ 71    Before leaving this point, I note that both the majority and the defendants have cited cases in which federal courts have held that the incorporation of a specific set of arbitration rules constitutes clear and unmistakable evidence that the parties intended to delegate the question of arbitrability to the arbitrator. In the majority order, my colleagues cite *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1071 (9th Cir. 2013). *Supra* ¶ 31. In *Oracle America*, the arbitration agreement included a specific set of rules—the United Nations Commission on International Trade Law (UNCITRAL) Arbitration Rules. The same is true in cases cited by the defendants. See, *e.g.*, *Fallo v. High-Tech Institute*, 559 F.3d 874, 877-78 (8th Cir. 2009) (disputes shall be settled by arbitration " 'in accordance with the Commercial Arbitration Rules of the American Arbitration Association' "); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (arbitration shall be conducted " 'in accordance with the Commercial Rules of the American Arbitration Association' "); *Bayer CropScience, Inc. v. Limagrain Genetics Corp.*, 2004 WL 2931284, at 4 (N.D. Ill. 2004) (arbitration shall be conducted " 'in accordance with the prevailing commercial arbitration rules of the American Arbitration Association' "); see also *Apollo Computer Inc. v. Berg*, 886 F.2d 469 (1st Cir. 1989) (arbitration provision provided that all

29

disputes would be resolved in accordance with the rules of arbitration of the International Chamber of Commerce).

¶ 72    It is important to note that in most of the cases cited, the parties incorporated a specific set of arbitration rules into their agreement, AND the parties were sophisticated business entities. That is not the case here. In this case, it is the majority who incorporated a new set of rules into the arbitration agreement, *sans* the parties. And not all parties are sophisticated entities. This case does not involve a clash of corporate titans. It is a dispute between an individual who sought nursing home care services and the corporate owners of the nursing home. The majority has questioned the dissent's notation that the plaintiff was not a sophisticated business entity, stating that there is no evidence on this matter in the record (s*upra* ¶ 41). Again, I disagree. The undisputed facts in the record show that the plaintiff did not negotiate or draft any of the admissions documents, including the Arbitration Agreement and Residency Contract. These were form contracts. They were prepared by the defendants and presented to the plaintiff immediately upon her transfer from a hospital to their facility. The plaintiff submitted an affidavit in which she stated that if she had known of the ramifications of the arbitration agreement, she would have declined to sign it. The evidence, and reasonable inferences therefrom, support a finding that the plaintiff was not a sophisticated corporate entity who was familiar with the many and varied rules of the AAA.[3]

¶ 73    Finally, I note that the defendants have likened their Arbitration Agreement to the arbitration agreement in *Rent-A-Center*. In *Rent-A-Center*, the plaintiff filed a federal employment discrimination case, and his employer moved to compel arbitration under a stand-alone arbitration

---

[3]Notably, the majority seems to recognize the plight of unsophisticated parties, noting that when the parties are not corporate entities familiar with the AAA rules, the incorporation of those AAA rules, with no indication of what is contained in them, may be particularly harsh or far from "clear and unmistakable." *Supra* ¶ 36.

agreement that contained several written provisions to settle a controversy by arbitration. *Rent-A-Center*, 561 U.S. at 68. One section, entitled "Claims Covered by the Agreement," provided for arbitration of all past, present, or future disputes arising out of the plaintiff's employment with Rent-A-Center, including claims for discrimination and claims for violation of any federal law. Another section, entitled "Arbitration Procedures," provided that " '[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.' " *Rent-A-Center*, 561 U.S. at 68. The delegation clause at issue here does not approach the level of specificity found provision in *Rent-A-Center*. The reference to unspecified "rules of the AAA" and the lack of definition of the subjects to be arbitrated do not constitute clear and unmistakable evidence of an intent to arbitrate questions of arbitrability.

¶ 74    Parties may delegate threshold arbitrability questions so long as the parties' agreement does so by clear and unmistakable evidence. *Henry Schein*, 586 U.S. at ___, 139 S. Ct. at 530. Unlike the question of scope, which carries a presumption that the issue will be decided by the arbitrator, the question of who decides arbitrability carries no such presumption. *First Options*, 514 U.S. at 944-45. In this case, the language in the delegation clause did not constitute clear and unmistakable evidence of an agreement to delegate arbitrability to the arbitrator. The language in the delegation clause is, at best, ambiguous as to the question of who should decide arbitrability, and the reference to a generic set of rules of the AAA does not answer that question. Accordingly, I find that the trial court correctly concluded that it had the authority to make gateway decisions regarding questions of arbitrability.

¶ 76      The next issue—one which the majority did not reach[4]—is whether the Arbitration

Agreement covered disputes arising out of the plaintiff's stay at Parkway Manor. In its order, the

trial court adopted the analysis in *Peterson*, 402 Ill. App. 3d 240, and determined that the

defendants' arbitration agreement did not contain "a clearly expressed intent to arbitrate

controversies arising out of the separate contract for nursing home services."

¶ 77      The defendants claim that the trial court erred in relying on *Peterson*. They argue that the

*Peterson* case is distinguishable because the defendants did not seek to enforce the delegation

clause in that case. They also argue that the *Peterson* court recognized the longstanding principle

that contemporaneously executed documents should be construed as one agreement, but added a

requirement that each document must incorporate the other by reference. The defendants contend

that the Arbitration Agreement and the Residency Contract were executed at the same time, by the

same parties, for the same purposes, and that the trial court erred when it failed to construe them

as one contract.

¶ 78      At the outset, I agree that the *Peterson* court did not decide whether the delegation

provision in the arbitration agreement was enforceable, as that issue was not raised.[5] The *Peterson*

court analyzed prior, but substantively similar versions of the same agreements at issue here, under

basic principles of contract law, and the analysis is useful. Under Illinois contract law, instruments

---

[4]In "addressing" this part of the dissent, the majority writes, "the dissent claims that our decision fails to address whether the arbitration agreement covered disputes arising out of the plaintiff's stay at Parkway Manor and argues *Peterson* controls on this issue" (*supra* ¶ 42). Again, my colleagues have either misread or misunderstood the dissent, as I have clearly pointed out that given the majority's finding that there was a valid delegation provision, the majority "did not reach" this issue.

[5]In its decision, the majority notes that the *Peterson* case was decided before *Rent-A-Center, West v. Jackson*, 561 U.S. 63 (2010). The majority then suggests that the *Peterson* case might have been decided differently if the court had the benefit of *Rent-A-Center*'s guidance (*supra* ¶ 25). Whether the *Peterson* court may have decided the case differently at another point in time is not at issue and is speculative.

executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, are regarded as one contract and will be construed together, unless there is evidence of a contrary intent. See *Gallagher*, 226 Ill. 2d at 233*; Sandra Frocks, Inc. v. Ziff*, 397 Ill. 497 (1947); see also *Dearborn Maple Venture, LLC v. SCI Illinois Services, Inc.*, 2012 IL App (1st) 103513, ¶ 31. The *Peterson* court recognized this principle of law. Then, upon examining both the arbitration agreement and the nursing home contract, the court found that neither document clearly referred to or expressly incorporated the other document. The court further found that the nursing home contract did not contain a provision for resolving disputes by arbitration. Additionally, the arbitration agreement did not define or identify disputes arising out of the nursing home care as subjects of the arbitration agreement. *Peterson*, 402 Ill. App. 3d at 246-47. Based upon those findings, the court concluded that there was evidence of a contrary intent. *Peterson*, 402 Ill. App. 3d at 245-47.

¶ 79 In this case, there is no indication that the parties intended that the Arbitration Agreement and the Residency Contract be construed together. According to the record, the Parkway Manor admissions packet contained no less than 15 documents, including the Residency Contract and Arbitration Agreement. All of the documents were purportedly executed by the plaintiff on June 11, 2019. The documents addressed a wide range of subjects and had a variety of purposes, including insurance and private pay; privacy, patient advocacy, and grievances; and a resident's psychological history and criminal history. The Arbitration Agreement was independent of and did not incorporate or refer to the Residency Contract. Although the defendants repeatedly argued that the Arbitration Agreement was an addendum to the Residency Contract, there is no indication of that in the Arbitration Agreement. In contrast, there is a document in the admissions packet

33

entitled, "Addendum to Residency Agreement."[6] That document specifically referred to the Residency Contract. The first sentence in that document provided, "This Addendum *** amends the existing Residency Agreement to which it is attached." The Arbitration Agreement contains no such language.

¶ 80    In addition, the delegation clause in the Arbitration Agreement provided that arbitration "shall be accomplished expeditiously in the county and state *where the property which is the subject of this Agreement*" was located. (Emphasis added.) This provision indicates that the subject of the arbitration agreement was limited to disputes about "the property." The Arbitration Agreement did not contain language indicating that it was intended to cover disputes arising from the Residency Contract or the nursing home care that the plaintiff received at Parkway Manor.

¶ 81    As previously noted, the *Peterson* court reviewed a prior version of the residency contract and arbitration agreement at issue here. The *Peterson* decision was issued June 7, 2010, and it has not been overturned. Since *Peterson* was decided, the Arbitration Agreement has been revised once, in February 2018, and the Residency Contract has been revised twice, in November 2017 and in April 2018. In *Peterson*, the court noted that the parties could have easily revised the nursing home contract to provide for arbitration of any and all disputes pertaining to nursing home care. See *Peterson*, 402 Ill. App. 3d at 246. Despite these clear admonitions, the defendants did not make the suggested revisions. This is further evidence of a contrary intent.

¶ 82    In examining the Arbitration Agreement and the Residency Contract, it is evident that these contracts were self-contained components of Parkway Manor's admissions packet. The documents were separate, freestanding contracts, and each dealt with distinct subjects. There is no indication

---

[6]In this Addendum, proposed residents verified that they had not been convicted of any of the felonies listed.

that the parties intended that these documents should be considered two sections of a single contract or that the terms of the Arbitration Agreement should apply to disputes arising under the Residency Contract. Accordingly, I do not find that the Arbitration Agreement contained a clearly expressed intent to arbitrate claims arising under either the Residency Contract or the nursing home care provided to the plaintiff.

¶ 83    For the reasons stated, I would affirm the trial court's order denying the motion to compel arbitration and stay the proceedings and remand this case for further proceedings.